**Joseph P. LUCIA, Plaintiff-Appellant,**

v.

**UNITED STATES of America et al.,
Defendants-Appellees.**

**No. 30342.**

United States Court of Appeals,
Fifth Circuit.

Aug. 23, 1971.

Coleman, Circuit Judge, concurred specially and filed opinion; Roney, Circuit Judge, dissented and filed opinion.

Charles Alan Wright, Austin, Tex., John G. Heard, Harry M. Reasoner, Thomas P. Marinis, Jr., Donald F. Wood, Vinson, Elkins, Searls & Connally, Houston, Tex., W. Dean Hester, Heath, Davis & McCalla, Austin, Tex., for plaintiff-appellant.

Meyer Rothwacks, John M. Dowd, Joseph M. Howard, and John P. Burke, Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., Seagal V. Wheatley, U. S. Atty., Hugh P.

Shovlin, Asst. U. S. Atty., San Antonio, Tex., for defendants-appellees.

Before COLEMAN, SIMPSON and RONEY, Circuit Judges.

SIMPSON, Circuit Judge:

Joseph P. Lucia, having successfully invoked his Fifth Amendment privilege against self-incrimination, as applied in Marchetti v. United States, 1968, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, to nullify his convictions for violations of the federal wagering excise tax laws, now seeks extension of that privilege so as to bar the tax collector from proceeding with a jeopardy assessment pursuant to Title 26, U.S.C. 6862.[1] The assessment was for $3,913,761.74 for wagering taxes and interest claimed to be due and owing to the United States under Title 26, Section 4401(a)[2]. The district court dismissed Lucia's complaint for injunctive relief. We reverse and remand for further proceedings.

*I. The Criminal Litigation*

Lucia was indicted in the Southern District of Texas on September 18, 1964, on various counts for violations of provisions of the federal statutory scheme for taxing illegal wagers. He first pleaded not guilty to all counts of the indictment, but at a rearraignment on January 18, 1965, he changed his plea to guilty as to Count 12[3] of the indictment. The court dismissed the remaining counts.

1. Title 26, U.S.C., Section 6862, reads as follows:

    (a) Immediate assessment.—If the Secretary or his delegate believes that the collection of any tax (other than income tax, estate tax, and gift tax) under any provision of the internal revenue laws will be jeopardized by delay, he shall, whether or not the time otherwise prescribed by law for making return and paying such tax has expired, immediately assess such tax (together with all interest, additional amounts, and additions to the tax provided for by law). Such tax, additions to the tax, and interest shall thereupon become immediately due and payable, and immediate notice and demand shall be made by the Secretary or his delegate for the payment thereof.

    (b) Immediate levy.—For provision permitting immediate levy in case of jeopardy, see section 6331(a).

    Title 26, U.S.C., Section 6331(a) reads as follows:

    (a) Authority of Secretary or delegate.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax * * * If the Secretary or his delegate makes a finding that the col-

lection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section.

2. Title 26, U.S.C., Section 4401(a) reads as follows: .

    (a) Wagers.—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.

3. Count 12 charged:

    That on or about the 31st day of December, 1963, in the Houston Division of the Southern District of Texas, JOSEPH P. LUCIA, also known as "JOE", hereinafter called the defendant, who during the month of November 1963, was in the business of accepting wagers as defined by Section 4421(1) (A), Title 26, United States Code, and during said month accepted such wagers in the amount of $11,080.00, upon which wagers there was due and owing to the United States of America by the defendant an excise tax of $1,108.00, as provided by Section 4401, Title 26, United States Code, did wilfully and knowingly attempt to evade and defeat all of the said excise tax on said wagers for the said month by failing to make and file Form 730 (Tax on Wagering Return) as required by law, by failing to pay to the District Director of Internal Revenue or any other proper officer of the United States of America said excise

Later that day the United States Attorney filed a criminal information [4] charging Lucia and others with conspiring willfully to fail to pay the federal ex-

tax, by failing to keep records as required by Section 4403, Title 26, United States Code by concealing and attempting to conceal the existence of said wagering business, by concealing and attempting to conceal the identity of the persons who placed wagers with the defendant, by destroying and causing to be destroyed memoranda and wagering slips relating to the accepting of wagers by the defendant, and by concealing and attempting to conceal his, the said defendant's identity through the use of false names. (Violation Section 7201, Title 26, United States Code).

4. The criminal information is quoted in its entirety:

"That from on or about the 1st day of March, 1959, to on or about the 31st day of January, 1964, and within the five years last past in the Houston Division of the Southern District of Texas, JOSEPH P. LUCIA, also known as "Joe", CHARLES SICOLA, also known as "Charlie", ANTHONY F. CRAPITTO, also known as "Doc", ROBERT ROGGEN, also known as "Colonel" and "Milky", HUGHIE WOODS, JOHN CUTRUPIA, also known as "Johnny", and PHILIP SALIBO, hereinafter called the defendants, and with other persons whose names are unknown, did unlawfully, knowingly and wilfully conspire, combine, confederate and agree together and with each other to violate Section 7203, Title 26, United States Code, that is, to wilfully fail to pay the excise tax on wagers which was due and owing to the United States of America by the said defendant JOSEPH P. LUCIA, for each month from March, 1959, through and including January, 1964, said taxes being imposed by Section 4401, Title 26, United States Code.

It was a part of said conspiracy that during the period of time heretofore alleged, the defendant JOSEPH P. LUCIA was in the business of accepting wagers on sporting events, and as a part of the operation of said business, said defendant JOSEPH P. LUCIA employed from time to time the other defendants herein named; the said defendants during the period of time heretofore alleged, would engage in the business of receiving and accepting wagers as defined by Section 4421(1)(A), Title 26, United States Code, upon which wagers the defendant JOSEPH P. LUCIA was required by law to pay to the United States a 10% excise tax, but as a part of said conspiracy, said

defendants would fail to make and file with the District Director of Internal Revenue Form 730 (Tax on Wagering Return) which said return was required by law to be filed monthly and was required to contain true and correct information regarding the defendants' wagering business;

It was further a part of the conspiracy that the defendants would attempt to conceal and disguise the nature and extent of the said wagering business and the identity of those who were engaging in the conduct and operation of said business.

As a further part of said conspiracy the defendants would make and keep falsified, inaccurate and incomplete records, some of which were in code, regarding their wagering activities and that from time to time the defendants would destroy, cause to be destroyed and attempt to destroy such records, as they had, concerning said wagering business, all of which was in an attempt to conceal from the Internal Revenue Service the true and accurate amount of taxable wagers placed with and accepted by the said defendants;

As a further part of said conspiracy the defendants would engage in the aforesaid business of receiving and accepting wagers without first having paid the special occupational tax imposed by Section 4411, Title 26, United States Code, and without obtaining, possessing and conspicuously displaying pursuant to Section 6806, Title 26, United States Code, the stamp required to be purchased by the defendants; further, the defendants engaged in the aforesaid wagering business and continued to engage in said business without registering with the District Director of Internal Revenue as required by Section 4412, Title 26, United States Code;

That pursuant to and for the purpose of carrying into execution the said unlawful conspiracy, combination, confederation and agreement and to effectuate the objects thereof, the following and other overt acts were committed in the Southern District of Texas and within the jurisdiction of this Court:

OVERT ACTS

1. On or about January 6, 1964, at Houston, Texas, defendant JOSEPH P. LUCIA received and accepted approximately $14,000.00 in United States currency as settlement of a wagering account maintained with the defendants' wagering business.

2. On or about November 16, 1963, at Houston, Texas, there was a meeting at

cise tax on gambling imposed by Title 26, U.S.C., Section 4401, in violation of Title 18, U.S.C., Section 371. The defendant again plead guilty. The court sentenced Lucia to consecutive terms of six months on the conspiracy charge and five years on the evasion charge. It also imposed a $10,000.00 fine on each count. The court suspended execution of the five year sentence and put Lucia with respect to it on probation. The two fines were paid and Lucia served the six month sentence.

On January 29, 1968, the Supreme Court decided *Marchetti* and *Grosso*. Asserting that these decisions should be given retroactive effect, Lucia filed a motion, in the nature of a writ of error coram nobis, to vacate and set aside the judgments and sentences. The district court ruled that *Marchetti* and *Grosso*

the A-C Pharmacy, 920 Caroline, between defendants JOSEPH P. LUCIA, ANTHONY F. CRAPITTO and PHILIP SALIBO.

3. On or about February 22, 1963, the defendants caused to be rented for their use in their business of accepting wagers the premises located at 5417 Anderson Road, Harris County, Texas, under the false and fictitious name of Airway Development Company.

4. On or about March 22, 1963, at Houston, Texas, the defendant CHARLES SICOLA used the false and fictitious name of M. N. Ahrmans in paying the rent on the premises located at 5417 Anderson Road, Harris County, Texas which premises were used in the operation of defendants' business of accepting wagers.

5. On or about the 5th day of November, 1962, the defendants obtained the use of the premises located at 11849 Gloger Road, Harris County, Texas, for their use in their business of accepting wagers.

6. On or about November, 1962, the defendants obtained two line rotary telephone service from Southwestern Bell Telephone Company at 11849 Gloger Road, Harris County, Texas by using the false and fictituous name of Jean Sorenson, which telephone service was listed in the false and fictitious name of Gloger Soliciting Service.

7. On or about November 4, 1962, defendant ROBERT ROGGEN burned and attempted to burn bet slips at 1017 Richmond Avenue, Houston, Texas.

8. On or about November 21, 1963, defendants CHARLES SICOLA and HUGHIE WOODS burned and destroyed bet slips at 5417 Anderson Road, Harris County, Texas.
County, Texas.

9. On or about January 29, 1963, the defendants obtained three line rotary telephone service from Southwestern Bell Telephone Company at 5417 Anderson Road, Harris County, Texas, by using the false and fictitious name of M. N. Ahrmans, which telephone service was listed in the false and fictitious name of Airway Development Company.

10. On or about November 5, 1963, at the A-C Pharmacy, 920 Caroline, Houston, Texas, the defendants attempted to destroy bet slips and line sheets which were records of the defendants' wagering business.

11. On or about June 21, 1962, the defendant JOSEPH P. LUCIA made a false, fictitious and fraudulent statement to agents of the Internal Revenue Service in that said JOSEPH P. LUCIA denied being in the business of accepting wagers.

12. On or about September 10, 1963, the defendant CHARLES SICOLA, picked up wagering paraphernalia at World Newsstand, Houston, Texas.

13. On or about September 12, 1963, the defendant, JOHN CUTRUPIA, paid World Newsstand, Houston, Texas, for wagering paraphernalia picked up previously by CHARLES SICOLA.

14. On or about August 23, 1961, the defendant, JOSEPH P. LUCIA, received and accepted approximately $2,000.00 in United States currency as settlement of a wagering account maintained with defendants' wagering business.

15. On or about July 25, 1962, the defendant, JOSEPH P. LUCIA, received and accepted approximately $2,000.00 in United States currency as settlement of a wagering account maintained with defendants wagering business.

16. On or about August 4, 1963, the defendant, JOSEPH P. LUCIA, received and accepted approximately $2,000.00 in United States currency as settlement of a wagering account maintained with defendants' wagering business.

17. That from on or about March, 1959, to and including on or about May, 1961, the defendant, Joseph P. Lucia, at Houston, Texas, cashed without endorsement at a bank, checks which had been paid to JOSEPH P. LUCIA on wagering accounts by persons who had previously placed wagers with the defendants, which checks were made payable to "Cash". (Violation Section 371, Title 18, United States Code).

had not voided the statutes under which Lucia had been convicted, but had merely provided a defense to them. Such a defense, reasoned the district court, could not be applied retroactively. In addition, the district court held that Lucia's guilty pleas had waived all defenses, including any defense based upon his privilege against self-incrimination. On appeal, this Court reversed and set aside the convictions, by giving *Marchetti* and *Grosso* retroactive effect. United States v. Lucia, 5 Cir. 1969, 416 F.2d 920. This court en banc adhered to the panel decision that *Marchetti* and *Grosso* should be applied retroactively to Lucia's motion. United States v. Lucia, 5 Cir. 1970, 423 F.2d 697. The government's petition for writ of certiorari was denied. United States v. Lucia, 1971, 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111.

## II. *The Wagering Excise Tax Assessment*

On July 25, 1969, the Internal Revenue Service assessed a wagering excise tax liability in the amount of $2,653,640.00, together with interest of $1,260,121.74, against Lucia for the period March 1, 1959, through November 21, 1963. The assessment was based upon a projection of the period's betting "handle" from betting slips taken from the possession of Lucia when he was arrested in 1962.[5] The computational process employed in this projection was set out in an affidavit filed in this case by the District Director of Internal Revenue, Austin, Texas:

"The agent had available one day's bet slips accepted during the 1962 football season. His calculations based upon those betting slips produced a total of $28,780.00 in bets accepted for that day. Based upon the proposition the wagers in the Houston area were accepted on a six-day per week basis and using $28,780.00 computed from the seized bet slips the Revenue Agent computed gross wagers accepted of $2,244,840.00 as being applicable to bets accepted during a 13-week football season. This sum represents 40% of gross wagers during an entire year. The Revenue Agent projected this figure into annual gross wagers accepted of $5,612,100.00. By eliminating one day per week, the Agent then determined that bets were accepted on 313 days annually. The annual gross wagers of $5,612,100.00 was converted into a daily amount of $17,930.00. Using this daily gross wager figure, the Agent then determined the number of days each month that wagers would be accepted and computed gross wagers on a monthly basis resulting in a tax liability totaling $2,653,640.00 for the period March 1, 1959, through November 21, 1963."

## III. *Lucia's Complaint for Injunctive Relief*

Lucia, on June 4, 1970, filed this suit in the United States District Court for the Western District of Texas, seeking to restrain the United States from proceeding with the assessment and from levying upon his property in accordance with the lien created by the assessment. The complaint alleged that the assessment was without factual foundation; that the assessment was barred by the statute of limitations; that the levy on his property would result in his bankruptcy; that he was without financial resources to pay the assessment; and that he was without an adequate legal avenue for relief.

5. Applying Title 26, U.S.C., Section 6020 (b) which reads as follows:
    (b) Execution of return by Secretary.—
    (1) Authority of Secretary to execute return.—If any person fails to make any return * * * required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary or his delegate shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
    (2) Status of returns.—Any return so made and subscribed by the Secretary or his delegate shall be prima facie good and sufficient for all legal purposes.

On June 9, 1970, the United States moved to dismiss the complaint for lack of subject-matter jurisdiction, citing Title 26, U.S.C., Section 7421(a).[6] By order dated June 23, 1970, the district court ordered the United States to proceed no further on the basis of its jeopardy assessment until such time as Lucia had an opportunity to complete discovery with respect to the tax assessment. On June 24, 1970, again citing Title 26, U.S.C., Section 7421(a), the government filed an amended motion to dismiss the complaint for lack of jurisdiction. Two days later, June 26, 1970, Lucia's motion for expedited discovery was granted.

Following the grant of Lucia's motion for expedited discovery, several skirmishes took place between the parties with respect to Lucia's efforts to depose officials of the Internal Revenue Service and his efforts to obtain a judicially-ordered stay of the assessment and levy pending final disposition of his suit for injunctive relief. On July 6, 1970, the district court granted the government's amended motion to dismiss the complaint for lack of jurisdiction, and denied Lucia's request for an injunction pending appeal to this Court. In so doing it noted that the Internal Revenue Service had indicated that there would be no levy pending appeal. The judge stated the case "was pretty much the garden variety, plain vanilla, of refund case to me". Our view differs. By an order dated July 20, 1970, the district court dismissed Lucia's complaint with prejudice and recited the interim arrangement between the parties regarding levy pending appeal. Lucia filed his notice of appeal on July 27, 1970.

## IV. The Parties' Appellate Arguments

Lucia first argues in this Court that the method employed by the government to compute the alleged wagering excise tax liability was arbitrary, capricious, and without factual foundation. In support of this proposition he places heavy reliance upon the Second's Circuit's decision in Pizzarello v. United States, 1969, 408 F.2d 579 cert. denied, 1969, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450. The appellee argues that the method and process of computation were entirely proper, pointing to this Court's decisions in Pinder v. United States, 5 Cir., 1964, 330 F.2d 119, and Mersel v. United States, 5 Cir., 1969, 420 F.2d 517.

The second point raised by Lucia on this appeal is that the assessment is barred by the three year statute of limitations embodied in Title 26, U.S.C., Section 6501.[7] The United States rejoins by citing Title 26, U.S.C., Section 6501(c) (3),[8] which permanently tolls the statute of limitations "in the case of failure to file a return". Lucia's answer to this argument is the proposition that under the Grosso ruling he was under no duty to file wagering excise tax returns and may not be deprived of his defense of the expiration of the limitation period for having failed to file.

Thirdly, Lucia argues that the district court improperly granted the government's motion to dismiss the complaint without first giving the taxpayer leave

---

6. Title 26, U.S.C., Section 7421(a):
   (a) Tax.—Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b) (1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

7. Title 26, U.S.C., Section 6501(a) is as follows:
   (a) General rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return

was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

8. Title 26, U.S.C., Section 6501(c) (3) is as follows:
   (3) No return.—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

to amend his complaint or to prove the truth of the allegations contained in the complaint. The appellee's response is that "Taxpayer did not inform the district court how he proposed to amend so as to nullify the effect of the record facts, and makes no such offer at this time."

As it did in the district court, the United States strenuously argues in this Court that Title 26, U.S.C., Section 7421 (a) prohibits this suit for injunctive relief from a tax assessment. Lucia, as he must to avoid the impact of Section 7421 (a), attempts to bring his case within the exception set forth in Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), where it is stated:

> "Nevertheless, *if it is clear that under no circumstances could the Government ultimately prevail*, the central purpose of the Act is inapplicable and * * * the attempted collection may be enjoined if equity jurisdiction otherwise exists." 370 U.S. at 7, 82 S.Ct. at 1129, 8 L.Ed.2d at 296) (Emphasis added).

The United States urges several additional bars to the grant of injunctive relief in addition to its statutory argument. These contentions are discussed *infra.*

### V.  *The Validity of the Assessment*

Following an unsuccessful prosecution for illegal wagering activity and an unsuccessful civil forfeiture proceeding, the Internal Revenue Service issued a jeopardy assessment against Emilio Pizzarello in the amount of $282,440.70. The assessment was based on betting slips for three days seized from the taxpayer in April, 1965. It purported to cover the period between April 1, 1960, and April 14, 1965. The district court denied Pizzarello's motion for preliminary injunction and dismissed the action for equitable relief. Pizzarello v. United States, 285 F.Supp. 147 (S.D.N.Y., 1968). The Court of Appeals, Pizzarello v. United States, 2 Cir. 1969, 408 F.2d 579, reversed, holding that:

> "Because the District Director made a totally excessive assessment, excessive because based on entirely inadequate

information, collection should be enjoined, if equity jurisdiction otherwise exists." op. cit. at page 584.

The aspect of the assessment which troubled the Second Circuit was discussed in the Court's opinion as follows:

> "One engaged in the business of accepting wagers is required by 26 U.S.C. §§ 4403 and 4423 to keep daily records of the gross wagers received and to produce them 'as frequently as may be needful to the enforcement of this (tax).' Pizzarello produced no records and the Government was obliged to estimate the volume and extent of his business. In so doing, as noted, it used a three-day average to calculate the wagers thought to have been received by the appellant over a five-year period.

> "But there is no proof in the record before us that Pizzarello operated as a gambler for five years or that, even if he did so operate, his three-day average of April 12th–14th, 1962, represented his average daily business for the other 1,575 days. No court could properly make such inferences without some foundation of fact." (op. cit. at page 583).

The Second Circuit acknowledged the difficulties faced by the Treasury Department in calculating the wagering excise tax liability of an individual who does not keep the required records, but nevertheless rejected the assessment:

> "Moreover, while we recognize the difficulties faced by Treasury Agents and the need to estimate in situations of this nature, wagers received on three consecutive days can hardly be said to be representative of wagers received over a five-year period, even assuming Pizzarello accepted wagers for as long as the Government contends. Notwithstanding the Government's assertion that there is substantial evidence of an extensive gambling operation here, at his trial evidence of gambling activity was limited to a period of only slightly over two weeks." (op. cit. at page 584)

The government here would distinguish *Pizzarello* on the following grounds: (1) Lucia was charged by indictment and information with wagering tax violations covering the period for which the excise tax assessment was made, while Pizzarello had been charged with criminal violations covering only a two week period; (2) Lucia entered a plea of guilty to the indictment and the information and the plea may be used as an admission against interest even though the judgments of conviction have been set aside; and (3) the government, as evidenced by the report of the Revenue Agent, is in possession of some evidence tending to establish that Lucia is a well-known bookmaker who has been in that business at least twenty years.

We decline because of binding precedent in this Circuit to adopt the rationale of the Second Circuit in *Pizzarello.* Hence we find it unnecessary to undertake a side by side detailed analysis and factual comparison of the two cases. In Pinder v. United States, 5 Cir. 1964, 330 F.2d 119, the government's tax assessment was computed by taking the total wagers on the day of the raid and projecting that amount back for the previous sixty-two weeks, and by assessing the tax at ten percent of that amount. We upheld the validity of the assessment, noting that the taxpayers had destroyed the underlying records and had failed to overcome the presumption of correctness which attaches to tax assessments.[9] In Mersel v. United States, 5 Cir. 1970, 420 F.2d 517, the government, in assessing excise tax on wagers, estimated the amount of tax due at $22,036.68, based on monthly reporting periods from August, 1961, to December, 1962. The estimate apparently was based on the claimed betting records seized during a raid and on the bets placed by a Treasury Agent, projected from August 1961 through December 1962, the date of the raid. We held that the taxpayer had failed to meet his burden of proof that the assessment was improper. *Pinder* and *Mersel* are not capable of being distinguished on principle from the case at bar.

Under Title 26, U.S.C., Section 6020(b) (2), the assessment against Lucia was prima facie correct as to the amount. The taxpayer, merely by attacking the methods used by the government to estimate the wagering excise tax liability, has failed to shoulder his burden of proof of establishing the invalidity of the assessment.

## VI. *The Statute of Limitations*

Before we deal with Lucia's argument with respect to the statute of limitations, it will put our inquiry in focus if we review the two recent Supreme Court decisions governing the relationship between the Fifth Amendment privilege against self-incrimination and the federal wagering excise tax scheme: *Grosso*, supra, and United States v. United States Coin and Currency, 1971, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434.

Anthony M. Grosso was convicted on fifteen counts of willful failure to pay the excise tax imposed on wagering by Title 26, U.S.C., Section 4401, four counts of willful failure to pay the special occupational tax imposed by Title 26, U.S.C., Section 4411, and one count of conspiracy to defraud the United States by evading payment of both taxes, in violation of Title 18, U.S.C., Section 371. Grosso moved before trial to dismiss the counts which charged conspiracy and failure to pay the excise tax, asserting that payment would have obliged him to incriminate himself, in violation of the privilege against self-incrimination guaranteed by the Fifth Amendment. He

---

9. Title 26, U.S.C., Section 4403:
   Each person liable for tax under this subchapter shall keep a daily record showing the gross amount of all wagers on which he is so liable, *in addition to* all other records required pursuant to section 6001(a).

Title 26, U.S.C., Section 4423, reads as follows:
   Notwithstanding section 7605(b), the books of account of any person liable for tax under *this chapter may be examined* and inspected as frequently as may be needful to the enforcement of this chapter.

reiterated this contention in support of unsuccessful motions for acquittal after verdict and for a new trial. The Court of Appeals for the Third Circuit affirmed the convictions, 358 F.2d 154 (1966). The Supreme Court granted certiorari and reversed. Grosso v. United States, 1968, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed. 2d 906.

The Supreme Court, speaking through Mr. Justice Harlan, observed that the Commonwealth of Pennsylvania, where Grosso had allegedly taken wagers, imposed criminal penalties upon those who engaged in unlawful gambling activities. He further noted that payment of the federal wagering excise tax would not be accepted by the Internal Revenue Service unless accompanied by the required return. 390 U.S. at page 65, 88 S.Ct. 709. Finally, the Court pointed out that the Internal Revenue Service had for some time provided state law enforcement authorities with information obtained from wagering excise tax returns. Idem at page 66. Under these circumstances, the Court ruled that Grosso would indeed have run a very substantial risk of self-incrimination under Pennsylvania's anti-gambling laws if he had complied with the provisions of the federal wagering excise tax statutes.

In United States v. United States Coin and Currency, supra, the Supreme Court, again speaking through Mr. Justice Harlan, held that the doctrines announced in *Marchetti* and *Grosso* were to be given retroactive effect in a forfeiture proceeding instituted pursuant to Title 26, U.S.C., Section 7302. In so ruling, the Court elaborated upon its holdings in *Marchetti* and *Grosso* in the following manner:

"The Government's principal argument turns upon an exceedingly narrow construction of our decisions in *Marchetti* and *Grosso*. In those cases, we took pains to make it clear that the Court in no way doubted the Government's power to assess and collect taxes on unlawful gambling activities. It was only the method Congress had adopted in collecting the tax that raised the Fifth Amendment question. The statute commanded that gamblers submit special registration statements and tax returns that contained information which could well incriminate them in many circumstances. Because the risk of self-incrimination was substantial, we held that a Fifth Amendment privilege could be raised as a defense to a criminal prosecution charging failure to file the required forms. Since it was only this method of tax collection which was subject to constitutional objection, we indicated that the Government remained free to collect taxes due under the statute so long as it did not attempt to punish the taxpayer for his failure to file the required documents." (401 U.S. at 717, 91 S.Ct. at 1043, 28 L.Ed.2d at 437.)

■ We believe that the Supreme Court's rulings in *Grosso* and *United States Coin and Currency* [10] require the conclusion that Lucia was under no duty to file federal wagering excise tax returns during the period for which the assessment has been made. For Lucia to have filed such returns might well have led to prosecution under the anti-gam-

---

10. The companion case to *Coins and Currency*, Mackey v. United States, 1971, 401 U.S. 661, 91 S.Ct. 1160, 28 L.Ed.2d 404, is distinguishable. Mackey was convicted of income tax evasion and during the course of his trial the government used monthly wagering tax forms which the petitioner had filed, as required by statute, to show that the gross amount of wagers he reported, less business expenses, exceeded the gambling profits reported on his income tax returns. Mr. Justice White, announcing the judgment of the Court, concluded that *Marchetti* and *Grosso* were not in that situation to be applied retroactively, since no threat to the reliability of the factfinding process was involved in the use of the wagering tax forms at Mackey's trial *for income tax evasion*. Unlike Mackey, Lucia faces the imposition of liability founded upon the *federal wagering excise tax statutes*. The difference we think is obvious and critical.

bling laws of Texas, Vernon's Penal Code of the State of Texas Annotated, Articles 646, et seq., and to conviction under those laws by means of evidence supplied by Lucia himself. Because we hold that Lucia was under no duty to file the returns, it follows that Lucia may not be deprived of the defense of the statute of limitations for failure to file returns under Title 26, U.S.C., Section 6501(c) (3). A contrary holding would constitute "punishment" of the taxpayer for his failure to file a return and such punishment is proscribed under the rulings of *Grosso* and *United States Coin and Currency.*

Several decisions of the Supreme Court support our conclusion with respect to the defense of the statute of limitations in this instance. In Garrity v. New Jersey, 1967, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed. 2d 562, police officers were convicted in state court of conspiracy to obstruct justice. During the course of their trials, the prosecution was permitted to introduce inculpatory statements which the officers had made to investigators after being advised that their refusal to give statements would lead to their dismissals. The Supreme Court reversed the convictions on the basis that the statements had been coerced in violation of the officers' rights under the Fourteenth and Fifth Amendments to the Constitution. The companion case of Spevack v. Klein, 1967, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574, held that an attorney could not be disbarred solely because he claimed his privilege against self-incrimination in refusing to provide records and testimony to an investigation into his alleged professional misconduct. Similar outcomes are noted in the cases of Gardner v. Broderick, 1968, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082, and Uniformed Sanitation Men's Association, Inc. v. Commissioner of Sanitation, 1968, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089. In *Gardner,* the Supreme Court reversed the state courts' refusal to reinstate a New York City police officer who had been discharged, pursuant to Section 1123 of the City Charter, for his refusal to execute a waiver of immunity when he was called before a grand jury investigating bribery and corruption. The petitioners in *Uniformed Sanitation Men* had been dismissed from their New York City Sanitation Department positions when they refused to provide information to investigating agencies which could have been used in criminal prosecutions against them. In all four cases, the Supreme Court denounced the placement of public employees and of lawyers in positions where they were faced with the choice of giving information on which they could be sent to prison or of losing their positions or professional licenses.

Title 26, U.S.C., Section 6501(c) (3), if literally applied here, would deprive Lucia of the defense of the statute of limitations, because, in an effort to avoid prosecution under Texas law for illegal gambling activities, he did not submit the required wagering excise tax returns to the United States Government. We view such choice as constitutionally impermissible under the teachings of *Garrity, Spevack, Gardner* and *Uniformed Sanitation Men,* supra. Lucia is thus entitled to interpose the defense of the statute of limitations in this assessment proceeding.

VII. *The Propriety of Injunctive Relief*

In addition to arguing that Title 26, U.S.C., Section 7421(a) bars injunctive relief against a tax assessment, the United States urges that Lucia's complaint fails to establish the existence of equitable jurisdiction for the following reasons: (1) Lucia's complaint fails to allege that he owes no tax or that he stands ready to pay any portion of the assessment which he does owe; (2) Lucia has an adequate remedy at law, with jury trial, by way of a refund suit pursuant to Title 26, U.S.C., Section 7422 (a); (3) the prospect that collection of the tax might ruin the taxpayer's economic condition is not in itself a sufficient ground for equitable relief against enforcement of tax liabilities; (4) the government has never abandoned the concept of fraud as a basis for lifting the

statute of limitations; and (5) the running of the normal three-year statute of limitations is not a basis for injunctive relief, citing United States v. Curd, 5 Cir. 1958, 257 F.2d 347, and Heidelberg v. Martin, 5 Cir. 1968, 395 F.2d 988.

Lucia's opposing argument is that: (1) he does not have an adequate remedy at law in a Section 7422 refund action because he would have to prove not only that the government's tax assessment was incorrect but also the correct amount of the tax, thereby rendering him vulnerable to state prosecution should he attempt to prove his true wagering excise tax liability; (2) the prospect of economic ruin resulting from the collection of the tax assessed is a proper basis for the grant of injunctive relief; (3) there is no issue of fact regarding the applicability of the statute of limitations to this case; and (4) an injunction may issue to restrain collection of taxes where it is necessary to protect a constitutional right.

For the reasons set forth below, we agree with Lucia's contentions.

It is important to bear in mind that the Supreme Court's decisions in *Marchetti, Grosso,* and *United States Coin and Currency* introduced an entirely new constitutional dimension to the administration of the federal wagering excise tax scheme. The earlier judicial decisions concerning the enforcement of the wagering excise tax focused primarily upon such matters as the method used to compute the tax assessment and the existence of fraud in returns filed with wagering tax payments. Because of this radical alteration of the constitutional environment, we believe that decisions pre-*Marchetti* and *Grosso* dealing with injunctive relief against wagering excise tax

assessments may not be relied upon to dispose of the issue presented here.

While the United States takes the position on brief that it has never abandoned its right to rely upon fraud as a means for preventing the statute of limitations from expiring, Title 26, U.S.C., Section 6501(a) (1) and Title 26, U.S.C., Section 6501(c) (2), we can discern no factual issue in the case as it now stands which would preclude the running of the statute of limitations. Both our cases of *Curd* and *Heidelberg,* supra, involved situations where the existence of fraud, as a factual matter, was in dispute. On that important basis, those decisions do not apply to Lucia's case.

Nor do we find merit in the government's contention that injunctive relief should be denied because Lucia has an adequate remedy by a suit for refund. Ordinarily of course, we would have no choice but to agree with such an argument. But in this case such a refund suit would be a meaningless ritual in light of our decision with respect to the running of the statute of limitations. In addition to the refund suit being meaningless, Lucia, in prosecuting such a refund suit, would be subject to possible prosecution under Texas law by providing information which could incriminate him.[11] No reason suggests itself to us as a valid one for requiring the appellant to undergo such risk in order to enable him to vindicate his right to the defense of the statute of limitations.

In ruling that the district court erred in dismissing Lucia's suit for injunctive relief, we have in mind the very restricted scope of the exception referred to in *Enochs,* supra. But the result of our resolution of the constitutional issue

---

11. The Supreme Court, in *Helvering v. Taylor,* 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed.2d 623, observed that the burden on the taxpayer in an action for the refund of taxes previously paid is "specifically to show not merely that the assessment was erroneous, but also the amount to which he was entitled". 293 U.S. at 514, 55 S.Ct. at 290, 79 L.Ed.2d at 628–629. The Fifth Circuit has consistently adhered to that view in refund cases. See

*Bicknell v. United States,* 5 Cir. 1970, 422 F.2d 1055, 1057. As a consequence, Lucia, in an action for the refund of wagering excise taxes paid, would in all likelihood find himself under considerable pressure, in order to sustain his burden of proof, to come forward with evidence which could be helpful to Texas law enforcement authorities in criminal proceedings against him.

raised by Lucia's appeal renders it unnecessary that he be required to allege more in the way of irreparable harm than the potential ruination of his financial condition should the government proceed to levy on his property.

## VIII. *Proceedings on Remand*

We recapitulate. We decide here that the government, but for the running of the statute of limitations, would have at least some possibility of prevailing in a suit for refund instituted by the taxpayer. But we hold also that Lucia may not be deprived of the defense of the statute of limitations for failure to file the required federal wagering excise tax returns with the Internal Revenue Service.

As noted above, the government has told us on this appeal that it never intended to abandon its right to rely upon fraud as a basis for tolling the statute of limitations. In the district court, the government relied, with good reason, on Lucia's failure to file wagering excise tax returns as the ground for the tolling of the limitations statute. Our decision invalidates that ground for constitutional reasons. But the government should be accorded the opportunity to come forward in the district court with another theory, if one is present, which would toll the statute of limitations. If the government fails to present a constitutionally permissible theory in this respect, the injunctive relief sought by Lucia is due to be granted by the district court.

Reversed and remanded for further proceedings consistent with the views expressed above.

COLEMAN, Circuit Judge (specially concurring):

I agree with the view that Lucia's failure to file the wagering tax returns would not toll the statute of limitations. If the statute has, in fact, run, then the litigation is controlled by one of the rules announced in Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S. Ct. 1125, 8 L.Ed.2d 292 (1962): i.e. "[I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act [Section 7421(a), Internal Revenue Code of 1954] is inapplicable", 370 U.S. at 7, 82 S.Ct. at 1129.

It is upon this consideration that I concur in the foregoing opinion of the Court.

RONEY, Circuit Judge (dissenting):

I cannot agree that the statute of limitations has run against the collection of the taxes for which this assessment was made. The running of the statute is the basis upon which the plaintiff is held to have met the tests of Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1931), as to when an injunction can be entertained notwithstanding 26 U.S.C. § 7421(a), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." *Cf.* Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962).

An individual has no substantive or fundamental right to the shelter of a period of limitations. Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). It has been held as a matter of constitutional law that statutes of limitations go to matters of remedy and do not involve the destruction of fundamental rights. Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885); United States v. Nebo Oil Co., 190 F.2d 1003 (5th Cir. 1951).

Congress has the power to create a right without a time limitation in which it must be exercised. Anderson v. United States Atomic Energy Commission, 313 F.2d 313 (7th Cir. 1963); *cf.* Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).[1] The power to

---

1. The United States is not barred by the defense of laches in the enforcement of government claims and cannot be barred from prosecuting tax claims because of laches. Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1940); United States v. Summerlin, 310 U.S. 414, 60

tax is given to Congress by the United States Constitution, Article 1, Section 8, Clause 1.

In the absence of clear Congressional intent, the right to collect taxes will not be presumed to be barred by any statute of limitations. Limitation statutes against the collection of taxes otherwise due and unpaid must be strictly construed in favor of the government. Pacific Coast Steel Co. v. McLaughlin, 61 F.2d 73 (9th Cir. 1932); Loewer Realty Co. v. Anderson, 31 F.2d 268 (2nd Cir. 1929); McDonald v. United States, 315 F.2d 796 (6th Cir. 1963).

In effect, a period of limitations runs against the collection of taxes only because the government through Congress has consented to such a defense. Absent consent of the government, there is no defense.

Congress has determined that the period of limitations for collection of taxes does not begin to run until a return is filed. In the case of a false or fraudulent return with the intent to evade tax, a willful attempt in any manner to defeat the tax, or the failure to file a return for any reason, there is no time limit within which collection proceedings must be instituted. 26 U.S.C. § 6501. This pattern was chosen by Congress with the obvious purpose of making sure that the passage of time will not bar the collection of the tax until the government has been made aware by the taxpayer that there was, or might be, tax liability. This is in keeping with our tax system, which "is premised largely on the theory of self-assessment." United States v. Gilmore, 222 F.2d 167 (5th Cir. 1955).

It is true that the recent cases of Marchetti,[2] Grosso[3] and United States v. United States Coin and Currency[4] have upset this fundamental system of self-assessment insofar as the wagering tax laws are concerned. However, there seems to be little basis for concluding that Congress intended that if the self-assessment system failed, the statute of limitations would nonetheless apply. In fact, the opposite intention seems to be clear. Cases of fraud, willful intent to evade, and failure to file a return are specific instances where the self-assessment system fails. In each such instance, Congress has provided that there is no statute of limitations defense.

The Supreme Court has carefully noted that there is no doubt that the government has the power to assess and collect taxes on unlawful gambling activities. United States Coin and Currency, supra. It has previously held that a tax does not cease to be valid merely because it regulates, discourages or even definitely deters the activities taxed or because it touches on activities which Congress might not otherwise regulate. United States v. Sanchez, 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950).

Any punishment of a taxpayer for failure to comply with the self-assessment method of tax collection has been foreclosed by Marchetti, supra, and Grosso, supra. However, I cannot agree that the collection of taxes legally owed is punishment within the concept of these decisions. Only taxes and interest were sought by the government against Lucia, no penalties, civil or criminal. Nor can I agree that the failure of Congress to provide a statute of limitations shelter against the collection of taxes, lawfully accrued, can be construed as a "punishment" for failure to file a return. Absent any substantive or fundamental right to a limitations defense, the taxpayer has been deprived of nothing to which he was constitutionally entitled.

S.Ct. 1019, 84 L.Ed. 1283 (1940); Olshausen v. C.I.R., 273 F.2d 23 (9th Cir. 1960), cert. den. 363 U.S. 820, 80 S.Ct. 1256, 4 L.Ed.2d 1517, reh. den. 364 U.S. 855, 81 S.Ct. 34, 5 L.Ed.2d 79.

2. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

3. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

4. United States v. United States Coin and Currency, 1971, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

Lucia argues that he has no remedy at law because the presumption of validity of tax assessments and the taxpayer's burden in a refund suit place him in the position of being unable to effectively litigate without the risk of self-incrimination, against which *Marchetti* and *Grosso* seek to protect him.

It may well be that some of the presumptions and burdens in this field of civil tax collection will have to shift in order to accommodate the principles set forth in these recent cases. However, it seems to me that these matters can be fully worked out in the regular administrative bodies and the courts to which Congress assigned such matters, and that the problems which might be encountered there do not give us a basis for injunctive jurisdiction in the face of § 7421(a).

I would affirm the dismissal of the complaint. The granting of leave to amend a complaint is within the sound discretion of the trial court. Absent some representation by the plaintiff as to additional grounds that might be asserted as a basis for relief, it would seem that there was no abuse of discretion in denying the motion for leave to amend.

Craven, Circuit Judge, dissented and filed opinion.