Carl Junior **HIGGINBOTHAM**,
Appellee,

v.

**UNITED STATES of America,**
Appellant.

No. 73–1342.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1973.

Decided Jan. 28, 1974.

Carleton D. Powell, Atty., Tax Div., U. S. Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Attys., Tax Div., U. S. Dept. of Justice, and John A. Field, III, U. S. Atty., on brief), for appellant.

John T. Kay, Jr., Charleston, W. Va. (Stanley E. Preiser, Preiser & Wilson, John T. Kay, Jr., and Kay, Casto & Chaney, Charleston, W. Va., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

This case involves a suit for refund of federal excise taxes on wagering and a counterclaim on account of such taxes filed by the United States for the years 1964 and 1965 in the total amount of $353,082.06.[1]  26 U.S.C. § 4401. The district court held that the applicable statute of limitations governing when assessments for wagering taxes must be made was three years and that the period had expired prior to the date of assessment.[2]  The court further held that the provisions of § 6501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 6501(c)(3), providing that if no return

1. No issue has been raised on this appeal as to the taxpayer's liability under 26 U.S.C. § 4411 for $125 in wagering occupational taxes for the period of January 1, 1964 to June 30, 1966. The sole issue before us is the timeliness of the assessment of wagering excise taxes under 26 U.S.C. §§ 4401 and 6501.

2. The Internal Revenue Code of 1954, 26 U. S.C. § 6501, provides:

Section 6501. *Limitations on Assessment and Collection.*

(a) *General Rule.*—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within three years after the return was filed (whether or not such return was

filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such shall be begun after the expiration of such period.

\*     \*     \*     \*     \*

(c) *Exceptions.*—

\*     \*     \*     \*     \*

(3) *No return.*—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

\*     \*     \*     \*     \*

is filed an assessment may be made at any time, were inapplicable in this case and, therefore, the assessments were untimely and not enforceable.

Since it relied on Lucia v. United States, 447 F.2d 912 (5th Cir. 1971) and an unreported case in holding § 6501(c)(3) inapplicable, the court obviously reasoned, although it did not so state, that depriving the taxpayer of the right to take advantage of the statute of limitations because he filed no wagering tax return would constitute a constitutionally impermissible punishment. Judgment was entered against the United States and this appeal followed. Because we feel that the shelter provided by the statute of limitations is not a fundamental right the denial of which would constitute a penalty in the constitutional sense on those involved in a criminal activity, we reverse.

The facts are not controverted. On February 6, 1970, the Internal Revenue Service made assessments for federal wagering excise taxes [3] against Carl Junior Higginbotham for each of the months in the years 1964 and 1965. The assessments were based on projections made from records seized by agents of the Intelligence Division of the Internal Revenue Service from the taxpayer in a raid on November 20, 1965. Higginbotham had filed no returns for the tax periods covered by the assessments, claiming in the alternative that he did not engage in the business of accepting wagers or that he feared that the information contained in the returns might tend to incriminate him. The district court, without a hearing, found he did not file returns because he feared the information contained in the returns might tend to incriminate him.

On May 6, 1971, the taxpayer paid $293.50 on the assessment for the monthly period ending July 31, 1964, and on May 14, 1971 he filed a claim for refund. After more than six months had expired after filing the claim, Higginbotham brought this suit for refund. In an amended answer, the United States filed a counterclaim against the taxpayer for the unpaid balance of the assessment in the amount of $352,786.56.

As a general rule, the assessment of any tax imposed by Title 26 of the U. S. Code, including the wagering excise tax, must be made within three years after the tax return is filed. 26 U.S.C. § 6501(a). If no return is filed, however, this three-year statute of limitations does not apply, and the assessment, or collection proceedings in court, may begin at any time. 26 U.S.C. § 6501(c)(3). Nothwithstanding this latter provision, the taxpayer here contends that the assessment was untimely, and thus he may not be required to pay the tax. Since the filing of the wagering tax return might tend to incriminate him, relying on Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968), and Grosso v. United

---

3. The Internal Revenue Code of 1954 provides:

   Section 4401. IMPOSITION OF TAX.

   (a) *Wagers.*—There shall be imposed on wagers, as defined in section 4421, an excise tax equal to 10 percent of the amount thereof.

   (b) *Amount of wager.*—In determining the amount of any wager for the purposes of this subchapter, all charges incident to the placing of such wager shall be included; except that if the taxpayer establishes, in accordance with regulations prescribed by the Secretary or his delegate, that an amount equal to the tax imposed by this subchapter has been collected as a separate charge from the person placing such wager, the amount so collected shall be excluded.

   (c) *Persons liable for tax.*—Each person who is engaged in the business of accepting wagers shall be liable for and shall pay the tax under this subchapter on all wagers placed with him. Each person who conducts any wagering pool or lottery shall be liable for and shall pay the tax under this subchapter on all wagers placed in such pool or lottery. Any person required to register under section 4412 who receives wagers for or on behalf of another person without having registered under section 4412 the name and residence of such other person shall be liable for and shall pay the tax under this subchapter on all such wagers received by him.

States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968), he argues that the denial of the defense of the three-year statute of limitations would constitute a constitutionally impermissible punishment. See United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). If the taxpayer is correct in this contention, the assessment would be barred since it was made on February 6, 1970, more than five years after the period in question.[4]

The Supreme Court considered the scope of a taxpayer's privilege against self-incrimination in two opinions rendered the same day in 1968. In Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), the court found that criminal prosecutions could not be sustained for failing to register and pay the occupational privilege tax[5] because the system of payment created "real and appreciable" hazards of self-incrimination. The court held that the registration and occupational tax provisions could not be employed to punish criminally persons who defended a failure to comply with a proper assertion of the privilege against self-incrimination. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), involved a defendant who had been convicted for willful failure to pay the wagering excise tax, willful failure to pay the occupational tax, and conspiracy to defraud the United States by evading payment of these taxes. The Supreme Court reversed the convictions, holding that the privilege against self-incrimination afforded a complete defense to criminal prosecutions for noncompliance with federal gambling tax and registration requirements.

More recently, in United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the court again had before it the conflict between the power to tax unlawful activity and the values protected by the taxpayer's privilege against self-incrimination. The defendant in *United States Coin* had been convicted of failing to register and pay the federal wagering taxes. Thereafter, the United States instituted forfeiture proceedings[6] to obtain $8,674.00 which he had in his possession at the time of his arrest. The court held that the privilege against self-incrimination was applicable in a civil forfeiture proceeding. The court reasoned:

"The Government's principal argument (that only criminal proceedings were proscribed, not civil proceedings such as forfeiture) turns upon an exceedingly narrow construction of our decisions in *Marchetti* and *Grosso*. In those cases, we took pains to make it clear that the Court in no way doubted the Government's power to assess and collect taxes on unlawful gambling activities. It was only the method Congress had adopted in collecting the tax that raised the Fifth Amendment question. The statute commanded that gamblers submit special registration statements and tax returns that contained information which could well incriminate them in many circumstances. Because the risk of self-incrimination was substan-

---

4. It should be noted, parenthetically, that the validity of the gambling excise tax is not here in question. "It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed." United States v. Sanchez, 340 U.S. 42, 44, 71 S.Ct. 108, 110, 95 L.Ed. 47 (1950). Indeed, in characterizing its earlier decisions dealing with the wagering excise tax, the Supreme Court remarked that "(i)n those cases, we took pains to make it clear that the Court in no way doubted the Government's power to assess and collect taxes

on unlawful gambling activities." United States v. United States Coin & Currency, 401 U.S. 715, 717, 91 S.Ct. 1041, 1043, 28 L.Ed.2d 434 (1971). See also Washington v. United States, 402 F.2d 3 (4th Cir. 1968), cert. den., 402 U.S. 978, 91 S.Ct. 1641, 29 L.Ed.2d 145 (1971), rehearing den., 403 U.S. 940, 91 S.Ct. 2242, 29 L.Ed.2d 720 (1971).

5. Internal Revenue Code of 1954 §§ 4411, 4412; 26 U.S.C. §§ 4411, 4412.

6. Internal Revenue Code of 1954 § 7302; 26 U.S.C. § 7302.

tial, we held that a Fifth Amendment privilege could be raised as a defense to a criminal prosecution charging failure to file the required forms. Since it was only this method of tax collection which was subject to constitutional objection, we indicated that the Government remained free to collect taxes due under the statute so long as it did not attempt to punish the taxpayer for his failure to file the required documents.[7] Thus, rejecting the argument that *Marchetti* and *Grosso* applied only to criminal sanctions, the court held that " 'proceedings instituted for the purpose of declaring the forfeiture of a man's property *by reason of offenses committed by him,* though they may be civil in form, are in their nature criminal' for Fifth Amendment purposes." [8]

We feel that neither *Marchetti,* nor *Grosso,* nor *United States Coin & Currency* require the result obtained below. Unlike the defendants in *Marchetti* and *Grosso,* the taxpayer here is not being prosecuted criminally for his failure to pay either the occupational tax or the wagering excise tax, nor is he being prosecuted for failing to register. The government seeks from Higginbotham only taxes and interest. Neither civil forfeiture nor criminal penalties have been imposed, nor are they sought.

For similar reasons, we feel that *United States Coin & Currency* is inapposite. The forfeiture statute there involved constituted a penalty upon those asserting a Fifth Amendment privilege since the provisions of the statute itself were intended to penalize only persons significantly involved in a criminal enterprise. In the instant case, the taxpayer urges that the denial of the statute of limitations' defense constitutes a similar penalty upon the exercise of his Fifth Amendment right. In contrast, however, the provisions of 26 U.S.C. § 6501(c)(3) (the statute of limitations on assessments) apply across the board to the public at large, to all persons re-

quired to pay taxes under Title 26 of the U. S. Code to the federal government. No distinction is made between those who owe ordinary income taxes, for example, and those who owe gambling excise taxes. All are treated alike as, of course, they must under a largely self-enforcing tax system.

The Supreme Court characterized statutes of limitation in Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945). The court thought it significant that these provisions "have come into the law not through the judicial process but through legislation. . . . Their shelter has never been regarded as what now is called a 'fundamental' right . . . of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control." [9]

We hold that the provision of 26 U.S. C. § 6501(c)(3) providing that assessments may be made at any time in the case of a taxpayer who fails to file a return, as applied to the defendant here, is not a constitutionally impermissible punishment. Arguably, the taxpayer may not be compelled to file a return since to do so involves substantial hazards of self-incrimination. On the other hand, his failure to file tolls the statute of limitations for assessments under § 6501, the same as any other taxpayer assessed under the Internal Revenue Code. Our legal system is "replete with situations requiring 'the making of difficult judgments' as to which course to follow. McMann v. Richardson, 397 U.S. [759], at 769, 90 S.Ct. [1441], at 1448 [25 L.Ed.2d 763]. Although a defendant may have a right, even of constitutional dimensions, to follow whatever course he chooses, the Constitution does not by that token always forbid requiring him to choose." [10]

---

7. 401 U.S. at 717, 91 S.Ct. at 1043.

8. 401 U.S. at 718, 91 S.Ct. at 1043. (Emphasis in original)

9. 325 U.S. at 314, 65 S.Ct. at 1142.

10. McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971).

**436**

Nothing is presented to us, or presents itself, in reason or in law, to justify the defendant in avoiding the assessment here on the grounds of the statute of limitations, when an ordinary taxpayer, engaged in a lawful occupation, may not avoid it under what otherwise would be precisely the same set of circumstances. The provisions of § 6501(c)(3) are not pointed at a small or limited class engaged in activity inherently suspect or unlawful, cf. *Marchetti, Grosso, United States Coin & Currency,* supra; they cover the broad mass of the taxpaying public sustaining the burden of government under every tax imposed by the Internal Revenue Code. So, if the defendant here finds himself a part of the mass, he may not complain. Accord Lucia v. United States, 474 F.2d 565 (5th Cir. 1973) (en banc); contra, Lucia v. United States, 447 F.2d 912 (5th Cir. 1971) (panel).

Accordingly, the decision of the district court that the February 6, 1970 assessment is barred by the three-year statute of limitations is reversed. The order entered December 5, 1972 must be vacated and the case remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.