Albert L. MERSEL and Michael Mersel t/a Mike's News & Sundries, Appellants,

v.

UNITED STATES of America, Appellee.

No. 25428.

United States Court of Appeals Fifth Circuit.

Oct. 2, 1969.

Order Jan. 5, 1970.

**518**

J. Edward Worton, Miami, Fla., for appellants.

Mitchell Rogovin, Johnnie M. Walters, Asst. Attys. Gen., Tax Div., Lee A. Jackson, Harry Marselli, Joseph M. Howard, John P. Burke, Frank X. Grossi, Jr., Attys., Dept. of Justice, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before WISDOM, GODBOLD and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The instant appeal is from a judgment entered in favor of the United States as defendant in a suit for recovery of occupational and excise taxes on wagering and of interest and delinquency penalties, which were paid under protest by appellants Albert L. Mersel and Mike Mersel, trading as Mike's News & Sun-

dries (hereinafter "taxpayers"). The trial was to the court, which entered findings of fact and conclusions of law.

Four grounds of error are asserted:

(1) That the record does not support the trial court's findings of fact. Basically, the findings attacked are to the effect that the plaintiffs were engaged during the period from August 1961 through June 1963 in the business of accepting wagers, and that the occupational and excise taxes on wagers, with penalties and interest, amounted to $32,074, as determined by the Commissioner of Internal Revenue.

(2) That the trial court erred in refusing to allow the plaintiffs to call an internal revenue agent as a rebuttal witness for the purpose of examining him as to the computation of the assessments.

(3) That the trial court erred in refusing to allow the plaintiffs to introduce testimony as to their reputation in the community for not accepting wagers.

(4) That the trial court erred in ruling as a matter of law that the plaintiffs' failure to pay the stamp tax and file the excise tax returns was not due to probable cause, and further holding that therefore the delinquency penalty collected was proper. As to the 4th point the government concedes error for the purposes of this appeal. Remand of the case for further proceedings is thus required. See Part IV of this opinion. As to the other questions raised, we dispose of them adversely to the taxpayers-plaintiffs-appellants.

I.

■ As we review the evidence, it should be borne in mind that the determination of tax and the assessment thereof by the Commissioner were presumptively correct. The taxpayers had the burden of proving that they were overtaxed and the amount by which they were overtaxed.[1]

1. 10 Mertens, Federal Income Taxation, Sec. 58A.35 (rev. edition 1965); Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Veino v. Fahs, 5 Cir. 1955, 257 F.2d 364, 367; Akers v. Scofield, 5 Cir. 1948, 167 F.2d 718, 720, certiorari denied 1948, 335 U.S. 823, 69 S.Ct. 47, 93 L.Ed. 378.

The evidence relied on by the trial court in finding that the plaintiffs were engaged in the business of accepting wagers falls into two categories: (1) the testimony of Special Agent D. J. Bonomi of the Internal Revenue Service that he placed seven wagers over a period of several weeks and observed others placing wagers with Mike Mersel during the same time; and (2) various items alleged to be wagering tools, devices or paraphernalia that were seized during a raid on Mike's News & Sundries on December 13, 1962. These items included columnar pads similar to accounting paper allegedly used to record wagers, football schedule sheets with handwritten markings, racing tip sheets and publications, scraps of paper alleged to be records of wagers and $1,032 in currency taken from the pockets of Mike Mersel at the time of the execution of the search warrant and incident arrest.

The appellants urge that inconsistencies between Agent Bonomi's testimony and his deposition and the fact that he relied on notes condensing prior memoranda in order to refresh his memory indicate that he was not a credible witness. Bonomi's testimony that he placed bets was contradicted by Mike Mersel's assertion that Bonomi was lying, that he never booked bets, and the taxpayers' principal employee's testimony that no bets were ever made in his presence. Bonomi explained the discrepancies between his deposition and his trial testimony by stating that the deposition was taken over four years after the events and that he subsequently had refreshed his recollection from memoranda not available to him at the time he was deposed. The trial judge was faced with and exercised a typical credibility choice. We are not at liberty to upset his findings in this regard as "clearly erroneous". F.R.Civ.P., Rule 52(a).

The appellants explain the physical evidence as follows: They contend that the alleged bookmaking account sheets were business records of the news stand, relying on a detailed explanation by Mike Mersel of the various entries. They maintain that records of point spreads for football and basketball games, along with what the government expert identified as coded summaries of wagers, were actually charts kept by Albert Mersel in connection with his personal hobby of following professional and collegiate athletic contests. With these records he said he could test the success of various betting systems against the actual outcome of football and basketball games. The tabulated results, he testified, were thus simply those of hypothetical or "mythical" bets under varying betting systems. Taxpayers state that the columnar pads and racing periodicals were openly on display and were sold on the premises. The money found on Mike Mersel was in hundred dollar bills except for a little over $100 in 20's. He said that the money was $1000 ready to go to the bank to be exchanged for 2 packages of ten dollar bills, 50 to the package, to be used in cashing customers' checks, plus $32.00 of personal funds. Finally, taxpayers rely on the testimony of the treasury agents participating in the raid that the scratch sheets and betting slips found on Mike Mersel could have been used by either a bookmaker or a bettor, and that no betting slips or recap sheets were found on the premises (except for the allegedly innocent items on the person of Mike Mersel) in early afternoon, a time normally busy for gamblers, as showing that the premises were not a bookmaking establishment. In this connection, they brought out from the raiding agents that no bets came in over the telephone during the several hours the search and inventory was being made the afternoon of the raid. This is urged as strongly indicative that the place was not a bookmaking establishment.

The physical evidence seized coupled with the expert testimony of Special Agent Edward Hilker supported the trial court's findings. This witness explained in detail how the items found could be used as gambling paraphernalia, that he had frequently seen similar items so used, and that his opinion was that the

items introduced as evidence by the government were tools of a bookmaker.

The explanations offered by the plaintiffs presented a credibility choice, of course. The duty of making that choice is by law cast upon the trier of facts, the trial judge. His findings of fact are binding upon us unless "clearly erroneous". Rule 52(a), Federal Rules of Civil Procedure. The conflicts in the testimony and the opposing explanations of the physical evidence were typical of such cases and the trial court's findings represented legitimate credibility choices. In these circumstances, his findings must be sustained by us. See Chaney v. City of Galveston, 5 Cir. 1966, 368 F.2d 774, and the authorities there collected, as well as our earlier case of Galena Oaks Corporation v. Scofield, 218 F.2d 217, for a full explication of the "clearly erroneous" standard.

In assessing the excise tax on wagers, the government estimated the amount of tax due at $22,036.68, based on monthly reporting periods from August 1961 to December 1962. The estimate was apparently based on the claimed betting records seized during the raid and on bets placed by Agent Bonomi, projected back to August 1961 under the procedure approved by this Court in Pinder v. United States, 5 Cir. 1964, 330 F.2d 119. However the government introduced no evidence to support the correctness of its dates of assessment other than testimony brought out on cross-examination of Michael Mersel that he purchased 40,000 20-line columnar pads on August 9, 1961.

The appellants contend that the trial judge improperly found that the assessment was correct, since, unlike the Pinder case, there was no evidence in the record justifying the projection back. However the burden was on the plaintiffs to demonstrate that the assessment was erroneous.[2] The taxpayers' proof consisted of their testimony and that of an employee that they accepted no wagers whatever. Also, they proffered

the testimony on rebuttal of the Internal Revenue Agent who made the computations to show the method of computation employed. Since the only issue raised by the taxpayers in their case in chief was whether they accepted wagers, and since the method of computing the assessment was not challenged, the government was not obligated to introduce evidence as part of its defense regarding the method of computation employed. The taxpayers' evidence that no gambling operation was conducted was not believed by the trier of fact. In Part II of this opinion, infra, we conclude that the offer of the Agent's testimony was properly excluded on rebuttal. It follows then, since the plaintiffs failed to meet their burden of showing that the assessment was improper, the trial judge was not in error in sustaining the assessment.

## II.

Inasmuch as the tax assessment computed by the government was prima facie correct, the taxpayers had the burden of showing it was erroneous. See footnote 1, supra. We have already indicated that the taxpayers' case in chief was devoted exclusively to proving that the plaintiffs had not engaged in gambling, and the government's evidence was responsive to that contention. Rebuttal evidence is of course generally admissible only to meet evidence introduced by the defendant, and since the government properly offered no evidence regarding the assessment, the trial judge's refusal to allow the Agent to be called in rebuttal was not an abuse of discretion.[3] The pre-trial order stated that one of the issues to be tried was whether the Commissioner's determination of the amount of taxes due was correct, and the taxpayers were on specific notice thereby that they were required to present evidence in their case in chief regarding the method of assessment if they wished to challenge it. We note further that no proffer of the nature of

---

2. See footnote 1, supra.

3. McVey v. Phillips Petroleum Co., 5 Cir. 1961, 288 F.2d 53.

the testimony sought was made. This of course might have aided the trial judge in exercising his discretion to relax the ordinary rules governing the order of proof. We sustain the decision of the trial judge in refusing permission to go back into this matter at the end of the case. The government met the case presented by appellants. No more was necessary. We find no error demonstrated in this regard.

### III.

Government Ex. 1 was an affidavit in support of an application for the search warrant issued to the agents who searched Mike's News & Sundries, which stated in part that the premises had a "reputation of accepting wagers on sporting events".

Taxpayers sought to meet this allegation at trial by proffering testimony of citizens in the community who were expected to testify that the establishment had a reputation for not accepting wagers. The trial court rejected the proffer.

As the government correctly states in its brief, the taxpayers could not offer evidence of good character at this civil trial to prove or disprove the doing of an act. 1 Wigmore, Evidence § 64 (3d ed. 1940), Pandula v. Fonseca, 1940, 145 Fla. 395, 400, 199 So. 358, 360. However the testimony was offered by the taxpayers not to prove their personal reputation but to rebut the assertion, one of the allegations in the affidavit for search warrant, that Mike's News & Sundries had a reputation as a gambling establishment. The proffered testimony would have been material and proper in support of a motion to suppress the evidence obtained under the search warrant. It would tend to show lack of probable cause. But this purpose was not present. Taxpayers' counsel had already announced in his opening statement that he was not able to suppress the evidence seized in the raid and was not attempting to do so. The trial court therefore ruled correctly in excluding the proffered testimony.[4]

### IV.

The taxpayers argue that the delinquency penalties imposed on them cannot be sustained because their failure to file excise tax returns and to pay the stamp tax was based on reasonable cause in view of the recent Supreme Court cases of Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) and Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). They argue that since a taxpayer is permitted to assert his Fifth Amendment privilege as a defense to a criminal prosecution for failing to pay the excise and occupational taxes and file registration papers, he is also permitted to assert the defense in a civil suit for assessment of penalties.

As to this point, the appellee concedes error. We quote from the brief for the United States:

"Taxpayers Specification No. 4 (Br. 18–19) argues that the delinquency penalties imposed in this case cannot be sustained because their failure to file excise tax returns and to pay the stamp tax was based on reasonable cause in view of the *Grosso* and *Marchetti* cases. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Marchetti v. United States, 390 U.S. 29 [39], 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

"The Government concedes this point, and consents to a remand for the limited purpose of a recomputation which will eliminate the delinquency penalties."

On oral argument before us, government counsel was careful to point out that this concession of error is for the

---

4. Since the search warrant was hearsay as to the plaintiff's reputation, it was admissible only for the limited purpose of determining the legality of the search. Hall v. State, 136 Tex.Cr.R. 320, 125 S.W.2d 293 (1939). It therefore could not be considered by the judge sitting as the trier of fact as tending to prove the plaintiffs' character. *Id.*

purposes of this case only, not to be binding on appellee in any other case. The questions raised are open in this Circuit, but have been passed on in other Circuits.[5] Despite our distaste for allowing the appellee to forego litigating these issues "at this time" so as to permit it to do so in a later case with a more favorable fact situation, the fact remains that this case is the only case before us. Therefore, while we think it would be highly preferable, in the interest of the orderly development of precedents to aid courts in this Circuit, for questions involving (1) the extent of the retroactive application of *Grosso* and *Marchetti* and (2) their applicability to civil cases as well as criminal cases, to be either fully conceded or argued and submitted for decision, we will not address ourselves further to these questions. Acceptance of the concession means only that *Grosso* and *Marchetti* are retroactively applied to *this* civil case.

This case is reversed and remanded for recomputation of the tax due with the penalties for delinquency eliminated.

Reversed and remanded.

### ORDER

PER CURIAM.

It is ordered that appellants' motion to tax costs out of time, filed in the above styled and numbered cause, is hereby denied.

It is further ordered that appellee's motion to recall the mandate and vacate the judgment for costs is hereby Granted. It appears that this suit was instituted below on March 6, 1966, that the statutory authority for awarding costs against the United States in this appeal (P.L. 89–507, 80 Stat. 308, 28 U.S.C. § 2412) was enacted July 18, 1966 and was made applicable (Sec. 3 thereof) "only to judgments entered in *actions filed subsequent* to the date of enactment of this Act." By disposition (not reported) of post-appeal motions in two recent cases, this Court has necessarily though sub silentio held that an appeal is not "an action" under Sec. 2412. United States v. Bowen, 5 Cir. 1969, 411 F.2d 923; Bay Sound Transportation Co. v. United States, 5 Cir. 1969, 410 F.2d 505. The result of the two holdings was to deny applicability of the section to cases where, as here, the original suit predated the 1966 amendment to Sec. 2412, and the appeal was taken after the amednment. We follow our own cases, rather than a contra holding by the 7th Circuit, Super Food Services, Inc. v. United States, decided September 10, 1969, 416 F.2d 1236.

---

5. As to applicability to civil cases, see United States v. United States Coin and Currency Amount of $8,674, 7 Cir. 1968, 393 F.2d 499, cert. granted 393 U.S. 949, 89 S.Ct. 375, 21 L.Ed.2d 361 (1968); argued February 25 and 26, 1969; restored for reargument May 26, 1969, 395 U.S. 918, 89 S.Ct. 1768, 23 L.Ed.2d 236, reversing civil forfeiture order; *contra* United States v. One 1965 Buick, 6 Cir. 1968, 392 F.2d 672; same case denying petition for rehearing (based on 7th Circuit case, supra, 393 F.2d 499) 6 Cir. 1968, 397 F.2d 782. Cf. Pizzarello v. United States, et al., 2 Cir. 1969, 408 F.2d 579.

As to retroactive application see Silbert v. United States, D.Md.1968, 282 F.Supp. 635, 645–646, giving retroactive application in Fifth but not in Fourth Amendment cases. See contra: Graham v. United States, 6 Cir. 1969, 407 F.2d 1313.

During the circulation of this opinion among the members of this panel for consideration, the decision of Judge Wisdom for another panel of this Court was published, holding squarely that *Grosso* and *Marchetti* are to be applied retroactively. See United States v. Lucia, 5 Cir. 1969, Part II, 416 F.2d 920. *Lucia* is a criminal case, but its effect is to provide additional authority for the disposition made of the case before us.