Charles D. BREMSON, Jr., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 78–0496–CV–W–2.

United States District Court, W. D. Missouri, W. D.

Aug. 31, 1978.

Robert W. Boland, Jr., Robert R. McQuain, of Boland & McQuain, Kansas City, Mo., for plaintiff.

Angelo I. Castelli, Tax Division, Dept. of Justice, Washington, D. C., Frederick O. Griffin, Jr., Asst. U. S. Dist. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF ALL RELIEF REQUESTED UNDER COUNT II OF THE COMPLAINT

COLLINSON, District Judge.

### I. STATEMENT OF THE CASE

This is an action for judicial review of a termination assessment of income tax against plaintiff Charles D. Bremson, Jr.[1] Plaintiff is under indictment in the District of Kansas, along with fourteen other defendants, for conspiracy to distribute controlled substances. Those charges are currently pending. The criminal case stems from an eighteen-month investigation by agents of the Drug Enforcement Administration (DEA) which included the use of informants, pen registers, ordinary surveillance techniques, and exchanges of information with other governmental agencies. On April 24, 1978, DEA agents sought and obtained authorization for a wiretap of plaintiff's residence.[2]

On May 13, 1978, DEA agents Barclay and Spaulding participated in the arrest of plaintiff and several of the other criminal defendants and a search and seizure of the contents of a storage locker leased by plaintiff in the name of "Oriental Express."[3] (Barclay Supp. Affidavit, ¶ 4(h)). This raid resulted in the recovery of approximately 160 pounds of hashish, 90 pounds of marijuana and two liters of hash oil. A search of plaintiff's automobile resulted in the seizure of a passport with plaintiff's picture and the name "Robert Turner Howard III." (Akins Affidavit, ¶ 8). Over $8,000.00 was seized pursuant to a search of plaintiff's residence. (Barclay Supp. Affidavit, ¶ 4(i)). The Intelligence Division of the IRS notified the Audit Division that these arrests had been made and directed the Audit Division to prepare for the possibility of a termination assessment. (Carter Affidavit, ¶ 2).

On May 16, 1978, IRS special agent Joseph McKenzie reviewed the evidence file in the criminal case at the United States Attorney's office in Kansas City, Kansas. McKenzie contacted IRS special agent Gerald C. Carter who also reviewed the file. The two agents then interviewed plaintiff who was waiting arraignment in the Wyandotte County Jail.[4] (Carter Affidavit, ¶ 3). The two IRS agents obtained an affidavit from DEA agent Spaulding.

On May 17, 1978, the criminal evidence was reviewed by Larry Akins, an attorney in the office of the Chief Counsel for the IRS in Kansas City, Missouri. Following this review, Akins telephoned Carter and directed the preparation of a recommendation for a termination assessment, Form 2644, and a computation of the tax assessment. (Carter Affidavit, ¶ 6). By this time, plaintiff had been released from custody on a $100,000.00 bond which had been

---

1. The complaint is in two counts. Count I seeks an injunction against collection of the tax assessed. Count II seeks judicial review of the assessment and the amount of tax assessed. As explained in the body of this order, Count I is still pending. This order pertains only to Count II.

2. The results of the investigation are contained in the affidavit of DEA agent Barbara J. Barclay which was submitted to a district judge in connection with the wiretap application. Plaintiff has been given this affidavit in connection with discovery in this case.

3. The Court is required to make findings of fact in this case based upon the record before the Court and the testimony adduced at the hear-

ing. Of course, it may turn out that the government may not be able to prove all of these facts or any others in the criminal case. It may also turn out that a jury in the criminal case may not believe that the government strictly met its burden of proof. These factual findings are only pertinent to this case and have no bearing whatsoever on the criminal proceedings.

4. A memorandum summarizing this interview was submitted, along with other *in camera* materials, to the Court for inspection at the hearing in this case. The Court directed that this memo be turned over to plaintiff for inspection and use in these proceedings.

secured from a Kansas City, Kansas bonding company. (Tr. 16, 55); (Akins Affidavit, ¶ 5). Akins reviewed Carter's preparation of the termination recommendation and it was forwarded to St. Louis, Missouri for review by Richard C. Voskuil, District Director of the IRS for this area of the country.

Voskuil reviewed the information forwarded by Carter and approved the termination assessment against plaintiff for the period of January 1, 1978 to and including May 13, 1978. He signed the Notice of Termination Assessment of Income Tax and transmitted it back to Carter who received it on May 18, 1978.[5] (Voskuil Affidavit, ¶ 4). Upon receipt, Carter notified the IRS Collection Division that plaintiff was to appear for an omnibus hearing in connection with the criminal case at 1:30 p. m. that afternoon at the United States Courthouse in Kansas City, Kansas. (Carter Affidavit, ¶ 7).

5. Termination assessments of income tax are authorized by 26 U.S.C. § 6851, as amended by the Tax Reform Act of 1976. In pertinent part, the statute provides:

(a) *Authority for making—*
(1) In general—If the Secretary finds that a taxpayer designs quickly to depart from the United States, or to remove his property therefrom or to conceal himself or his property therein, or to do any other act . . . *tending to prejudice or to render wholly or partially ineffectual proceedings to collect the income tax* . . . unless such proceeding be brought without delay, the Secretary shall immediately make a determination of the tax . . . and notwithstanding any other provision of law, *such tax shall become immediately due and payable.* The Secretary shall immediately assess the amount of the tax so determined . . . and shall cause notice of such determination and assessment to be given to the taxpayer, together with a demand for *immediate payment of the tax.*

\*　\*　\*　\*　\*　\*

(b) Notice of deficiency—If an assessment of tax is made under the authority of subsection (a), the Secretary shall mail a notice under section 6212(a) for the taxpayer's full taxable year (determined without regard to any action taken under subsection (a)) with respect to which such assessment was made within 60 days after the later of (i) the due date of the taxpayer's return for such taxable year . . . ., or (ii) the date such taxpayer files such return.

\*　\*　\*　\*　\*　\*

Carter, along with Revenue Officer Sam Wilkerson and IRS special agent Greg Pierce, went to the United States Courthouse at that time and served plaintiff with the Notice of Termination Assessment at 2:15 p. m.[6] (Carter Affidavit, ¶ 8); (Tr. 53). They also made a demand for immediate payment. Following the service, Wilkerson telephoned his group manager, Pat Masteller, and informed him that plaintiff had been given the notice. Apparently, IRS agents were stationed at various points around the Kansas City Metropolitan area and were contacted immediately after Wilkerson notified Masteller that service had been accomplished. (Tr. 53). These agents served notices of levies at the following locations at the noted times:

(1) Commerce Bank of Kansas City, 2:20 p. m.,

(2) Mid-Continent National Bank of Kansas City, 2:21 p. m.,

The effect of these provisions is that the IRS is allowed to commence collection of taxes before the end of the taxable year and prior to filing a return. Accordingly, it is analogous to the collection of estimated taxes and substantially different from a jeopardy assessment under 26 U.S.C. § 6861. That statute requires the IRS to issue a notice of deficiency within 60 days *after the assessment.* This, of course, triggers the taxpayer's access to the Tax Court to litigate the tax liability. However, under a § 6851 termination assessment, the notice of deficiency is not given until after the close of the current taxable year. Thus, review in the Tax Court is postponed. This latter procedure was adopted in the Tax Reform Act of 1976. See, 1976 U.S. Code Cong. & Admin. News, p. 2897, 3789–3796. The same Act of Congress set up the review procedure that led to this case. 26 U.S.C. § 7429. Both aspects of the 1976 legislation were reactions to *Laing v. United States,* 423 U.S. 161 (1976) which held that the notice of deficiency under § 6851 had to be given in the same manner as that notice was given under § 6861.

6. Plaintiff attempted to prove at the hearing in this case that the levies described in the text occurred prior to the service of the termination notice. (Tr. 28–42). The Court does not find this evidence convincing, especially in view of the witness' inability to identify the IRS agents involved in the service of the notice. (Tr. 52).

(3) Recorder of Deeds of Jackson County, Missouri, 2:21 p. m.,

(4) Southgate State Bank in Shawnee Mission, Kansas, 2:28 p. m.,

(5) Commerce Bank of Blue Hills, 2:30 p. m.,

(6) Leawood National Bank, 2:35 p. m.,

(7) Register of Deeds of Johnson County, Kansas, 2:37 p. m. (Tr. 27–28).

These levies were to insure payment of the tax assessment which was computed at $339,945.00.

Plaintiff timely requested administrative review of this assessment under the provisions of 26 U.S.C. § 7429(a). The IRS declined to make any adjustment in the amount of the assessment. The complaint in this case was filed July 7, 1978. Count II of the complaint seeks judicial review of the termination assessment and the assessed amount of tax.[7] Count I of the complaint is not before the Court at this time.[8]

■ The parties engaged in some discovery after the filing of the complaint. The deposition of Gerald Carter was taken by plaintiff and interrogatories were answered by the government which included attached documents. Plaintiff filed a request for production under Rule 34, Fed.R. Civ.P., but contends that the government failed to respond to the request after being ordered to do so by the Court. Plaintiff filed a motion for sanctions under the provisions of Rule 37, Fed.R.Civ.P., on July 26, 1978.

A hearing was held on July 27, 1978, on the substantive issues in this case. However, the question presented by the motion for sanctions was discussed on the record. (Tr. 6–13). At that time, the government filed the IRS files compiled by the revenue agents *in camera* for the Court's inspection. Following a recess, the Court ordered the production of a memorandum of an interview with plaintiff[9] and disallowed any further discovery. (Tr. 15).

The Court holds that the government's failure to produce the documents prior to the July 27 hearing was "substantially justified," within the meaning of Rule 37(b)(2) and (d), Fed.R.Civ.P. The documents in question add nothing to the affidavits filed in this case. (Tr. 14). Moreover, these proceedings have been greatly expedited in view of the very brief time allowed by law for the review process. 26 U.S.C. § 7429(b)(2) and (c). In view of this factor, imposition of sanctions on the basis of delay in the order of production is not warranted. It is true that the test under Rule 37(d), Fed.R.Civ.P., is simply whether there has been a failure to allow discovery. 8 Wright & Miller, *Civil Practice and Procedure* § 2291, p. 809 (1970); 4A *Moore's Federal Practice*, ¶ 37.05, p. 37–103, 106 (2d ed. 1974). The reasons for the failure, though, are relevant considerations. *Hunter v. International Systems and Controls Corp.*, 56 F.R.D. 617, 620 (W.D.Mo.1972); *Bollard v. Volkswagen of America, Inc.*, 56 F.R.D. 569, 584 (W.D.Mo.1971). There has been no showing that the delay in obtaining the documents ultimately held discoverable (the interview memo) severely prejudiced plaintiff's case. *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977). Plaintiff's motion for sanctions will be denied.

The provisions of the Internal Revenue Code relevant to this case have been judicially noticed. (Tr. 60–61). The termination assessment provisions are set out in note 5, *supra*. As noted there, the Tax Reform Act of 1976, P.L. 94–455, 90 Stat. 1695, altered the provisions for review of the assessed tax in the Tax Court. The same act of Congress, though, created a procedure for expedited review of both termination and jeopardy assessments in the district courts. The issues presented in such a case are set out at 26 U.S.C. § 7429(b)(2):

> necessary because the government refused to waive its rights under the federal rules and because the time for answering the complaint has not yet expired.

---

7. See note 1, *supra*.

8. On this date, the Court is entering a show cause order directing the government to show cause why Count I should not be decided on this basis of the evidence of record. This is

9. See note 4, *supra*.

—Within 20 days after an action is commenced under paragraph (1), the district court shall determine whether or not—

(A) the making of the assessment . . is reasonable under the circumstances, and

(B) the amount so assessed or demanded . . . is appropriate under the circumstances.

The government has the burden of proof on the first question and must furnish the taxpayer with information regarding how the amount of the assessment was computed. However, the burden of proof on the second question is on the plaintiff. 26 U.S.C. § 7429(g).

■ Proceedings under the new statute are entirely separate from any subsequent proceedings to determine the taxpayer's correct tax liability either in Tax Court proceedings or in refund actions in federal district court or in the Court of Claims. 1976 U.S. Code Cong. & Admin. News, p. 2897, 3795. Thus, the question of plaintiff's actual liability for income taxes for 1978 is irrelevant.[10] The statute contemplates a *de novo* review of the IRS determinations and the Court must consider any information that has a bearing on the two questions. Review is not limited to the information available to the IRS at the time of the assessment.[11] 1976 U.S. Code Cong. & Admin. News, p. 2897, 3794. The Court's findings on the two questions are final and do not constitute appealable orders. 26 U.S.C. § 7429(f).

## II. WAS THE ASSESSMENT REASONABLE UNDER THE CIRCUMSTANCES

■ Under the provisions of 26 U.S.C. § 6851,[12] a termination assessment may be made when the IRS finds that the taxpayer is designing to leave the country or to remove his property from the country, or to conceal himself or his property, or " . . . to do any other act tending to prejudice . . . proceedings to collect the income tax . . . ." In this case, the IRS found " . . . that the taxpayer . . . was designing to conceal his assets and to remove his property from the United States thereby tending to prejudice or render ineffectual the collection of income tax for the 1978 taxable year." (Voskuil Affidavit, ¶ 3); (Akins Affidavit, ¶ 11). The issue is whether, based upon all relevant information of record, the government has met its burden of proving that this finding was reasonable under the circumstances.

The entire affidavit submitted in connection with the DEA's application for wiretap authorization was turned over to the IRS. This document along with the Spaulding affidavit and the oral statements of the persons connected with the criminal investigation of plaintiff, summarizes the results of the DEA's investigative efforts from January, 1977 up to and including May 13, 1978 (the termination date for the assessment). (Barclay Supp. Affidavit, ¶ 3). The Court has thoroughly reviewed this affidavit, which was produced in connection with the government's response to certain interrogatories propounded by plaintiff.[13]

The wiretap was installed at plaintiff's residence on April 24, 1978. (Barclay Supp. Affidavit, ¶ 4(a)). During that week, DEA agents overhead telephone conversations in which they learned that plaintiff had paid $260/lb. for a shipment of 300 lbs. of marijuana from Florida. This shipment was completely sold within two days for an av-

---

**10.** Plaintiff has contended that the computation employed by the IRS is erroneous because it does not take into account such things as business deductions, income averaging and other assorted items. However, the only issue in this proceeding is the termination assessment which, as noted at note 5, *supra*, is simply a method of early collection of a portion of the taxes due for the entire year. Since the question of plaintiff's ultimate tax liability is irrelevant, this contention is without merit.

**11.** Plaintiff has contended that the Supplemental Affidavit of Barbara J. Barclay should be deemed inadmissable since it allegedly conflicts with some of Gerald Carter's deposition testimony. In view of the scope of review noted in the text, this contention is without merit.

**12.** See note 5, *supra*.

**13.** See note 2, *supra*.

erage of $387/lb. ($325/lb. for lower grade and $450/lb. for higher grade.) Plaintiff negotiated for the shipment of an additional 600 lbs. and stated that he would put up $50,000 cash. (Barclay Supp. Affidavit, ¶ 4(b)–(f)).

On April 30, 1978, DEA agents went through plaintiff's trash and found seven garbage can size plastic bags containing marijuana residue. They also found thirteen large paper bags containing marijuana residue and marked "Product of Colombia." (Barclay Supp. Affidavit, ¶ 4(g)).

A passport was seized from plaintiff's automobile on the day he was arrested. This document contained plaintiff's picture but had the name "Robert Turner Howard III" under the photograph. (Barclay Supp. Affidavit, ¶ 4(i)); (Akins Affidavit, ¶ 8). In connection with the criminal investigation, the DEA subpoenaed plaintiff's telephone and American Express bills. These indicated that plaintiff traveled abroad extensively during 1976, 1977 and early 1978. (Akins Affidavit, ¶ 9). By the time of the assessment five days after his arrest plaintiff was free on a $100,000.00 bond. (Tr. 16, 55). The IRS was aware of about sixteen bank accounts in the Kansas City area containing liquid funds used by plaintiff or corporations controlled by him. (Akins Affidavit, ¶ 5).

Finally, the IRS was aware that plaintiff conveyed three parcels of real estate to his attorneys on May 18, 1978, the date plaintiff was notified of the assessment. The land was worth approximately $175,000.00 less encumbrances and was conveyed by quit-claim deed. (Akins Affidavit, ¶ 12).

On the basis of this evidence, the Court ruled at the July 27 hearing that the government had sustained its burden *prima facie* on the first question and that the burden of going forward with evidence on this question had shifted to plaintiff. (Tr. 16–17). The Court was careful to point out at that time, and emphasizes here, that the ultimate risk of non-persuasion on this question always remains on the government.

Plaintiff's contention on this issue is that because the assessment was allegedly procedurally invalid, it could not be reasonable under the circumstances. The Court has considered the testimony and evidence presented in support of this contention and finds it unconvincing. See, note 6, *supra*. Plaintiff has also suggested that the IRS cannot make a termination assessment until and unless there has been a conviction on the criminal charges. Plaintiff cites no authority for this contention but apparently argues that because there has been no proof of his involvement in drug distribution, there can be no reason to believe he has unreported income. This contention is without merit. In the criminal case, the government has the burden of proof on every issue and must convince the trier of fact beyond a reasonable doubt. In these civil proceedings, the burden of proof varies from issue to issue and the standard is one of "reasonableness" and "appropriateness" under the circumstances. See, note 3, *supra*. See generally, *Loretto v. United States*, 440 F.Supp. 1168, 1172 (E.D.Pa. 1977).

The Court holds that plaintiff has not come forward with any evidence tending to rebut the showing made by the government with respect to the first question under 26 U.S.C. § 7429(b)(2). In view of the facts discussed above, the Court concludes that the IRS had reasonable cause to believe that grounds existed for a termination assessment. The making of the assessment under 26 U.S.C. § 6851 was reasonable under the circumstances.

### III. WAS THE AMOUNT ASSESSED APPROPRIATE UNDER THE CIRCUMSTANCES

Plaintiff's tax year was terminated as of May 13, 1978. His tax liability for the period of January 1, 1978 to the termination date has been assessed at $339,945.00. The issue here is whether, based upon all evidence of record, plaintiff has met his burden of proving that this amount is inappropriate under the circumstances.

The computation of the assessment is set out in the Notice of Termination Assessment of Income Tax which was served on plaintiff on May 18, 1978. This computation is as follows:

| | |
|---|---:|
| 300 Pounds sold at $340.00 per pound | $102,000-- |
| 300 Pounds cost at $250.00 per pound | 75,000-- |
| Net Weekly Profit | 27,000-- |
| × 19 weeks (1/1/78 – 5/13/78) | 19 |
| | 243,000-- |
| | 270,000-- |
| Adjusted Gross Income | 513,000-- |
| Less: Exemption | 750 |
| Less: Excess Zero Bracket | –0– |
| Taxable Income | 512,250-- |
| Tax | 340,125-- |
| Less: General Tax Credit | 180-- |
| TOTAL TAX | $339,945-- |

As noted, this computation was prepared by Revenue Agent Gerald Carter. (Carter Affidavit, ¶ 6). The computation is based primarily on wiretap evidence obtained by DEA agents during the week of April 23, 1978.

This wiretap information was given to Carter in the form of an affidavit from DEA agent Spaulding.[14] This affidavit states, in part:

> During the week of April 23, 1978 I was aware of the fact that Mr. Bremson received and distributed 300 pounds of Columbian [sic] marijuana. The street value of the Columbian [sic] marijuana was $340 per pound. Mr. Bremson's cost of the marijuana was $250 per pound. Through electronic surveillance I learned that Mr. Bremson almost always paid cash on delivery for the marijuana. Based on my observations, the above activity during the week of April 23, 1978, was representative of Mr. Bremson's average weekly drug purchase and sale activities during the period January 1, 1978 through May 13, 1978.

Based on this one specific transaction, and Spaulding's statement that the transaction was representative of plaintiff's weekly purchase and sale activities, Carter simply multiplied plaintiff's net profit on this sale by nineteen weeks. (Tr. 46–48).

Plaintiff's only contention regarding this method of calculation is that an assessment for a nineteen week period cannot be accurate when based on only one specific transaction.[15] This contention is based on *Lucia v. United States,* 447 F.2d 912 (5th Cir. 1971), and *Pizzarello v. United States,* 408 F.2d 579 (2d Cir. 1969), *cert. den.* 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969). *Lucia* involved an assessment pursuant to 26 U.S.C. § 6862 for unpaid wagering excise taxes. The tax period in question was approximately 56 months. Computation of the tax was based on betting slips taken from plaintiff showing one day's return on football bets. This return was spread over the 56-month period "[B]ased upon the *proposition* the wagers in the Houston area were accepted on a six-day per week basis . . . during a 13-week football season." *Lucia v. United States, supra* at 916. (Emphasis added.) The court in *Lucia* quoted from the *Pizzarello* opinion as follows:

> But there is no proof in the record before us that Pizzarello operated as a gambler for five years or that, even if he did so operate, his three-day average of April

---

**14.** This affidavit was taken from Spaulding at the United States Attorney's office in Kansas City, Kansas. (Carter Affidavit, ¶ 4). This affidavit was provided to plaintiff in the government's answers to plaintiff's interrogatories. See text following note 8, *supra.*

**15.** Plaintiff has contended throughout these proceedings that the government must disclose more than it has in the expedited discovery undertaken in this case. Plaintiff contends that this disclosure is necessary in order to show that the amount of tax assessed was inappropriate. Under 26 U.S.C. § 7429(g)(2), the IRS is obligated to furnish plaintiff a written statement which contains any information regarding the computation of the amount assessed. The government has contended that the Notice of Termination satisfies this requirement. (Tr. 13). Plaintiff contends that he is entitled to the information that formed the basis for the affidavits. However, plaintiff has been furnished with the affidavit of Barbara Barclay which was submitted in support of the DEA application for wiretap authorization. (Tr. 8). Plaintiff also has the wiretap transcripts. (Tr. 7). Finally, the Court examined the revenue agents' entire files and has ruled that plaintiff is not entitled to any more discovery than what has already taken place. See text following note 8, *supra.* Therefore, plaintiff's argument in this regard is without merit.

12th–14th, 1962, represented his average daily business for the other 1,575 days. No court could properly make such inferences without some foundation of fact. (op. cit. at page 583).

*Lucia v. United States, supra* at 918. The *Lucia* court declined to follow the Second Circuit's holding in *Pizzarello* because of binding Fifth Circuit precedent upholding such rough calculations. *Lucia v. United States, supra* at 919. See, *Pinder v. United States,* 330 F.2d 119 (5th Cir. 1964); *Mersel v. United States,* 420 F.2d 517 (5th Cir. 1970).

In this case, however, the use of one transaction to calculate an assessment for a nineteen week period has the factual basis that the court in *Pizzarello* found lacking. DEA agent Spaulding concluded that the one 300 pound sale was representative of plaintiff's weekly purchase and sale activities based upon his investigation of approximately eighteen months. This included wiretapped conversations which set forth the accuracy of the specific sale used for the calculations. All of this information was turned over to the IRS.

An additional factor here is that the IRS used only the projected income from marijuana sales. (Tr. 51–52). When plaintiff was arrested, he was in possession of hashish and hashish oil.[16] Income from sales of these substances was not included in the assessment. Moreover, the IRS did not include any of plaintiff's legitimate income in the assessment. Accordingly, the Court holds that the methodology employed by the IRS in computing the assessment was proper.[17]

Plaintiff has not produced any evidence at all which would tend to show that his income for the terminated period was less than that assessed by the IRS. He has not met his burden of proof under 26 U.S.C. § 7429(g)(2). Accordingly, the Court holds that the amount of tax assessed as a result

of the action taken under 26 U.S.C. § 6851 is appropriate under the circumstances.

## IV. CONCLUSION

The Court will take up the issues presented in Count I of plaintiff's complaint at the expiration of the time period set forth in the show cause order to be entered contemporaneously with this order. With respect to the discovery questions and the issues presented in Count II of the complaint, and in view of the foregoing, it is

ORDERED that plaintiff's motion for sanctions under Rule 37(d), filed July 26, 1978, be, and the same hereby is, denied; and it is

ORDERED that all relief sought by plaintiff in Count II of his complaint be, and hereby is, denied.

---

16. See note 3, *supra*.

17. The government has cited several cases upholding similar assessments in its brief. See, *e. g., Iannelli v. Long,* 487 F.2d 317 (3d Cir. 1973); *Hamilton v. United States,* 309 F.Supp. 468 (S.D.N.Y.1969), *aff'd* 429 F.2d 427 (2d Cir.

1970), *cert. den.* 401 U.S. 913, 91 S.Ct. 881, 27 L.Ed.2d 812 (1971); *United States v. Washington,* 251 F.Supp. 359 (E.D.Va.1966), *aff'd* 402 F.2d 3 (4th Cir. 1968); *O'Neill v. United States,* 198 F.Supp. 367 (E.D.N.Y.1961).