BAY SOUND TRANSPORTATION COM-
PANY et al., Appellants,

v.

UNITED STATES of America,
Appellee.

No. 25729.

United States Court of Appeals
Fifth Circuit.

April 30, 1969.

Rehearing Denied May 30, 1969.

Paul Port, John A. Bailey, Childress, Port & Crady, Houston, Tex., for appellants.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli, William A. Friedlander, Elmer J. Kelsey, Attys., Dept. of Justice, Washington, D. C., Morton L. Susman, U. S. Atty., James R. Gough, Frank C. Cooksey, Asst. U. S. Attys., Houston, Tex., for appellee.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, District Judge.

LEWIS R. MORGAN, Circuit Judge:

These related income tax refund actions were consolidated and tried before the District Court sitting without a jury. This appeal by the taxpayers is taken from portions of twenty-six (26) judgments of the District Court. The three issues presented to this Court are:

1. Whether the taxpayers' estimated useful lives of certain vessels were "reasonable" in claiming a depreciation allowance. Section 167 of the Internal Revenue Code of 1954.

2. Whether taxpayer C. W. Edwards is entitled to deduct claimed business entertainment expenses in the absence of any record evidence under Section 162 of the Internal Revenue Code of 1954.

3. Whether the "principal" or "major" purpose for the formation of multiple corporations was tax avoidance. Sections 269 and 1551 of the Internal Revenue Code of 1954.

C. W. Edwards is the prime founder and still operates to a large extent a number of partnerships and corporations engaged in the business of hauling crude oil and distillate in the Louisiana and Texas coastal areas.

Edwards Transportation Company is the parent organization. It is a partnership set up in the early 1930's by C. W. Edwards and another individual, now deceased. In 1939, Edwards organized his first corporation, Barge Transport Company, for the benefit of his son, Keith Edwards. From its inception, Barge Transport Company has conducted its business within the framework of the entire Edwards organization. At the time of the trial in the court below Edwards was in his 70th year.

In 1955, it was decided that each newly acquired towboat, pushboat, and barge should be owned and operated by separate corporations. Accordingly, by June, 1966, the time of the trial below, nineteen separate business organizations— one partnership and eighteen corporations—each owned one of the nineteen new vessels.

The Commissioner of Internal Revenue disallowed the surtax exemptions of the corporate taxpayers under Section 269 [1]

1. *Section 269, Internal Revenue Code of 1954:*
SEC. 269. Acquisitions made to evade or avoid income tax.
  (a) *In general.*—If—
    (1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or
    (2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before

of the Internal Revenue Code, contending that the several corporations were formed for the "principal purpose" of tax avoidance. Taxpayers contend that the principal purpose for creating multiple corporations was to limit the liability of the Edwards enterprise. They allege several other purposes for incorporating multiple businesses, and assert that tax considerations took a minor role.

The District Court, following a non-jury trial of the case, found that the entire enterprise should be treated as a single business entity, rather than as separate corporations. Although the Court did not specifically so state, it bottomed its opinion on Section 1551 of the Code.[2] It did not rely on Section 269, as was urged by the Commissioner.

In the late 1950's and during the taxable years 1957 to 1960, the corporate

such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation,

and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then the Secretary or his delegate may disallow such deduction, credit, or other allowance. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation.

(b) *Power of Secretary or his delegate to allow deduction, etc., in part.*—In any case to which subsection (a) applies the Secretary or his delegate is authorized—

(1) to allow as a deduction, credit, or allowance any part of any amount disallowed by such subsection, if he determines that such allowance will not result in the evasion or avoidance of Federal income tax for which the acquisition was made; or

(2) to distribute, apportion, or allocate gross income, and distribute, apportion, or allocate the deductions, credits, or allowances the benefit of which was sought to be secured, between or among the corporations, or properties, or parts thereof, involved, and to allow such deductions, credits, or allowances so distributed, apportioned, or allocated, but to give effect to such allowance only to such extent as he determines will not result in the evasion or avoidance of Federal income tax for which the acquisition was made; or

(3) to exercise his powers in part under paragraph (1) and in part under paragraph (2).

2. *Section 1551, Internal Revenue Code of 1954:*

SEC. 1551. [Prior to its amendment by the Revenue Act of 1964]. Disallowance of surtax exemption and accumulated earnings credit.

If any corporation transfers * * * all or part of its property (other than money) to another corporation which was created for the purpose of acquiring such property or which was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor corporation or its stockholders, or both, are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then such transferee corporation shall not for such taxable year (except as may be otherwise determined under section 269(b)) be allowed either the $25,000 exemption from surtax provided in section 11(c) or the * * * accumulated earnings credit provided in * * * section 535(c), unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer. For purposes of this section, control means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of the corporation. In determining the ownership * * *, the ownership of stock shall be determined in accordance with the provisions of section 544, except that constructive ownership under section 544(a)(2) shall be determined only with respect to the individual's spouse and minor children. * * *

taxpayers estimated the probable useful lives of their newly built vessels for depreciation purposes pursuant to Section 167(a) of the Code.[3] The criterion is that the estimation must be "reasonable". The taxpayers estimated the useful lives of the vessels to be seven years. The Commissioner maintained at trial that the barges had a useful life of twenty-five years, and the tugboats thirty-five years. The Court below found that the tugs had a useful life of twenty years, except that the useful lives of four tugs was fifteen years. The Court also found that the barges had a useful life of fifteen years.

Taxpayers object vigorously that the Commissioner and the District Court erred in gauging useful life on the basis of depreciation history of those vessels which were constructed prior to 1955. The lower court in fact found that the taxpayers' actual past experience was to retire few pre-1955 vessels from service.

Alternatively, taxpayers argue that the trial court should have applied the doctrine of equitable estoppel because of alleged statements by certain Internal Revenue agents to officials of the taxpayers shortly before 1957 that the useful lives of seven years would be a criterion acceptable to the Internal Revenue Service. The Court gave little weight to taxpayers' proof on this point and held, in any event, that such statements would not be binding on the Government.

A report on the depreciable lives of the vessels was prepared by the Internal Revenue Service Valuation Analysis Branch. The report favored the taxpayers' position. The Government re-

pudiated the report, and the trial Court gave little weight to the report. The taxpayers assert that the report was entitled to "considerable weight".

C. W. Edwards, individually, claimed business entertainment expense deductions of several thousands of dollars for the years 1958 and 1959. The Commissioner disallowed the claims for the reason that Edwards failed to prove the expenditures. Edwards regularly cashed $300.00 checks for these expenses and kept the cash in his hip pocket, separate from his front pocket where he kept his personal funds. The District Court approved the Commissioner's ruling, stating that the claimed expenditures were not substantiated by sufficient evidence. Edwards argues that records of expenses were not required during the taxable years in question.

Alternatively, it is argued that the trial Court should have employed the "Cohan rule" to allow a reasonable approximation of the expenditures claimed by Edwards. The Government retorts that the rule is inapplicable where no clear evidence of any amount spent is advanced by the taxpayer.

Section 167(a) of the Code authorizes the taxpayer to arrive at a "reasonable allowance" for depreciation. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan, so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property. See Treasury Regulation § 1.167(a)–1(a).[4]

---

3. *Section 167(a), Internal Revenue Code of 1954:*
SEC. 167. Depreciation.
(a) *General rule.*—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
  (1) of property used in the trade or business, or
  (2) of property held for the production of income.

4. *Treasury Regulations on Income Tax* (1954 Code):
Sec. 1.167(a)–1. *Depreciation in general.*
(a) *Reasonable allowance.* Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. The allowance is that amount

Salvage values are not involved on this appeal.

■ The useful life of an asset is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. See Treasury Regulation § 1.167(a)–1(b).[5]

■ A study of Treas.Reg. § 1.167 (a)–1(b) makes clear that the taxpayer's past experience is but one of several factors to be considered when estimating the useful life of an asset. In addition to the taxpayer's past experience with similar property, "present conditions and probable future developments" must be taken into account.

The taxpayers maintain that the District Court ignored evidence which showed several other relevant factors besides past experience. Apparently, the trial Court relied heavily on the useful life experience of the Edwards organization with respect to the vessels constructed prior to 1955. However, the District Court's findings examine in detail other significant factors, such as the thickness and quality of the steel hulls, changes in design of the vessels, etc.

The report of the Valuation Analysis Branch of the Internal Revenue Service recommended that depreciation deductions for the vessels should be based on useful lives of ten to twelve years. The Commissioner insists that he never adopted the report and that, contrary to the taxpayers' position, he should not be bound by the suggestions of the report. The trial Court originally excluded the report because it was ruled hearsay. Later, in its memorandum opinion, the Court admitted it as a business record exception to the hearsay rule, on the authority of Brooks v. Texas General In-

which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amount set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property, as provided in section 167(g) and § 1.167(g)–1. An asset shall not be depreciated below a reasonable salvage value under any method of computing depreciation. However, see section 167(f) and § 1.167(f)–1 for rules which permit a reduction in the amount of salvage value to be taken into account for certain personal property acquired after October 16, 1962. See also paragraph (c) of this section for definition of salvage. The allowance shall not reflect amounts representing a mere reduction in market value. See section 179 and § 1.179–1 for a further description of the term "reasonable allowance".

5. *Treasury Regulations on Income Tax* (1954 Code):
Sec. 1.167(a)–1. *Depreciation in general.*
(b) *Useful life.* For the purpose of section 167 the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the pro-

duction of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Salvage value is not a factor for the purpose of determining useful life. If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. For rules covering agreements with respect to useful life, see section 167(d) and § 1.167(d)–1.

demnity Co., 251 F.2d 15, 16 (5 Cir., 1958). It is readily apparent from the District Court's opinion, however, that, as the trier of fact, he did not give the report much evidential weight.

■ Taxpayers argue that the Internal Revenue Service report was deserving of substantial and perhaps controlling weight. On the other hand, it seems proper that the District Court, as the finder of fact, should be allowed to give the expert opinion in the report such credence as he deems appropriate under all the circumstances of the case. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944).

■ The taxpayers assert that the Commissioner should be equitably estopped to deny the seven-year useful life estimate because of the alleged assurances of the local Internal Revenue officials that such a period would be acceptable. The evidence is contradictory concerning the granting of such an assurance. In any event, the trial Court found that at most the conversation applied to only one vessel, the pushboat *Letha C.*

In 1956, nine months prior to the alleged conversation, a new Treasury regulation, § 1.167(d)-1,[6] was promulgated. The regulation provides for a method of concluding a formal agreement with the Government on the question of useful life for future depreciation. Assuming that a seven-year useful life was approved by the Internal Revenue agents, it was not arrived at in accordance with the requirements of Treasury Regulation 1.167(d)-1. Any statement made concerning useful life would be unauthorized.

It is the lack of authority in the agents that is critical. Assuming that the alleged assurances were given by the agents, the statements were unauthorized and the Government will not be estopped by the unauthorized statements of its agents. Sanders v. Commissioner, 225 F.2d 629, 634 (10 Cir., 1955), cert. den. 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839 (1956). The case of Simmons v. United States, 308 F.2d 938 (5 Cir., 1962), and the cases cited therein, do not appear to be applicable. In those cases there existed no controversy over the fact that the crucial statements were made and that the statements were authorized. Such are not the facts in the instant case.

The remaining grounds urged by the taxpayers on the depreciation issue appear to be without merit.

■ We hold that the findings of the District Court on the depreciation issue were not "clearly erroneous" and that the Court should be affirmed on this issue. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

On the business entertainment expense issue, C. W. Edwards kept no records whatsoever of the claimed expenditures for business entertainment. Even prior to the 1962 enactment of Section 274(d)

---

6. *Treasury Regulations on Income Tax* (1954 Code):
Sec. 1.167(d)-1. *Agreement as to Useful Life and Rates of Depreciation.*
After August 16, 1954, a taxpayer may, for taxable years ending after December 31, 1953, enter into an agreement with respect to the estimated useful life, method and rate of depreciation, and treatment of salvage of any property which is subject to the allowance for depreciation. An application for such agreement may be made to the district director of internal revenue for the district

in which the taxpayer's return is required to be filed. Such application shall be filed in quadruplicate and shall contain in such detail as may be practical the following information.
  (a) * * *
  (b) * * *
  (c) * * *
  (d) * * *
  (e) * * *
  (f) * * *
The agreement must be in writing and must be signed by the taxpayer and by the district director.

of the 1954 Code,[7] this Court required the taxpayer to demonstrate "with some substantiality" the extent of his personal obligation for entertainment expense. Williams v. United States, 245 F.2d 559, 560 (5 Cir., 1957).

■ The record fails to reveal that Mr. Edwards proved even a portion of his expenses to be deductible. This fact renders futile a court's effort to determine that at least a given amount was actually spent or incurred as an entertainment expense. Mayrath v. Commissioner of Internal Revenue, 357 F.2d 209, 214 (5 Cir., 1966). The rule in Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2 Cir., 1930), is inapposite under the circumstances of this case.

On the multiple corporate issue, although the District Court did not specifically so hold, it is evident from reading the lower Court's memorandum opinion that the Court relied on Section 1551 of the Code instead of Section 269 (a), as was urged by the Commissioner in denying the taxpayers' separate surtax exemptions.

■ Section 1551 is explicit in its requirement that the transferor of property to the newly established transferee corporate body must itself be a corporation. If the transferor was not a corporation, then Section 1551 is inapplicable. The Commissioner maintains that the transferor was Barge Transport Company, a corporation; that it was Barge Transport Company which transferred the newly constructed vehicles to the new corporations. The Commissioner urges that this Court hold that such a finding is implicit in the lower Court's memorandum opinion, even though the lower Court did not make that finding.

An examination of the entire record has failed to reveal any evidence that Barge Transport Company, or any other corporation, transferred the vessels to the new corporations so as to bring these various corporations within the purview of Section 1551.

The Commissioner contends that each of the 18 corporations to which Section 1551 applies was acquired in essentially the same manner. The decision to construct the vessel was made by C. W. Edwards, the vice president of the Barge Transport Company, the original corporation, after consulting with his son, Keith Edwards, the president, Jack Redding, the secretary and treasurer, of Barge Transport Company, and others. While the vessel was under construction, and about the time for delivery thereof, financing of the cost would be arranged. After the decision to construct each vessel was made, and the order therefor was placed with the company doing the construction work, a new corporation was organized to receive the vessel when completed. All property rights that

---

7. *Sec. 274(d)*, *Internal Revenue Code of 1954:*
SEC. 274. Disallowance of certain entertainment, etc., expenses.
(d) *Substantiation Required.*—No deduction shall be allowed—
(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),
(2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or
(3) for any expense for gifts,
unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.

existed in the vessel were acquired by the new corporation, and when and as the vessel was completed and delivered, the new corporation took title. Each corporation acquired only one vessel. The above-summarized evidence is insufficient to support the conclusion that there was a transfer of property from Barge Transport Company to the newly acquired corporations.

The surtax exemptions here in question were not properly disallowed under the provisions of Section 1551. However, the Government contends that, if the Court does not agree that the record will support no finding other than that tax avoidance was the principal purpose of the transactions in question, the case should be remanded to the District Court for additional findings as to the applicability of Section 269. We agree that if Section 1551 is not applicable that this Court should direct that the case be remanded for the District Court to determine if Section 269 is applicable to these transactions and also to the transfers of the vessels *CT&J* and *Toni Ann*.[8]

As its title denotes, Section 269 is designed to prevent "acquisitions made to evade or avoid income tax". However, the section is applicable only in certain carefully circumscribed situations—it may be invoked only where there has been an acquisition of control, the *principal purpose* of which is evasion or avoidance of taxes.

■ Section 269 provides that if any person acquires control of a corporation and the principal purpose of this acquisition is evasion of income taxes by securing the benefit of a deduction, credit, or other allowance, which he would not otherwise enjoy, then the deduction credit or allowance may be disallowed. The determination of the taxpayer's principal purpose in incorporation is a question of fact that depends upon the intent of the taxpayer at the time he acquires control of the corporation. See Airport Grove Corp. of Polk County, et al. v. United States of America, 5 Cir., 1969, 408 F.2d 870. The taxpayer has the burden of proving that control was not acquired for the unlawful purpose. American Pipe & Steel Corp. v. Commissioner, 243 F.2d 125 (9 Cir., 1957).

■ The District Court did not make findings on the question of taxpayers' "principal purpose" under Section 269 (a). The issue of "principal purpose" is one of fact. For this Court to hold that the "principal purpose" of these transactions was "evasion or avoidance of federal income tax", when the Court below failed to consider this matter, and when the facts might suggest a contrary conclusion under Section 269, would be wholly inappropriate. In cases tried without a jury, Federal Rules of Civil Procedure 52(a) directs the District Court to determine the essential facts upon which it bases its judgment; where the trial Court fails to do so, this Court cannot make such findings of fact. S. S. Silberblatt, Inc. v. United States ex rel. Lambert Corp., 353 F.2d 545, 549–550 (5 Cir., 1965).

The findings and conclusions of the District Court are affirmed on the issues disallowing taxpayers' claimed depreciation and entertainment expenses.

We disagree with the disallowance of the surtax exemptions under Section 1551 and remand the case to the District Court to determine whether or not the findings of fact on the record are sufficient to disallow the exemptions of the surtax under Section 269.

Affirmed in part; reversed and remanded in part for further proceedings not inconsistent herewith.

---

8. These two vessels were transferred to Bay Sound Transportation Company and Riverside Transportation Company from Louisiana Transportation Company, a partnership.