SANFORD OTTIS BARNES, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barnes v. Commissioner
Docket No. 3068-92
United States Tax Court
T.C. Memo 1994-95; 1994 Tax Ct. Memo LEXIS 96; 67 T.C.M. (CCH) 2341; 18 Employee Benefits Cas. (BNA) 1421; March 3, 1994, Filed *96 Decision will be entered for respondent. For petitioner: Karl Norman Clifford. For respondent: William Mark Scott. SCOTT SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1988 in the amount of $ 29,563. The deficiency includes a 10-percent additional tax on early distributions under section 72(t)[1] in the amount of $ 11,341. The issues for decision are: (1) Whether petitioner, after having within 60 days of a distribution from a qualified pension plan, rolled over the amount of the distribution into an individual retirement account is entitled to elect to use 10-year averaging in determining the tax on the distribution he received from the individual retirement account into which the initial distribution was placed; and (2) whether the *97 additional tax on early distributions under section 72(t) applies to more than $ 109,277.66 of the $ 113,412.21 distribution petitioner received in 1988. All of the facts have been stipulated and are found accordingly. Petitioner resided in Mobeetie, Texas, at the time of the filing of his petition in this case. Petitioner was born on December 6, 1934. Prior to December 31, 1987, petitioner was employed by Cabot Corporation (Cabot). While an employee of Cabot, petitioner participated in the Cabot Pension Trust (the pension trust) and the Cabot Corporation Profit Sharing & Savings Plan (the savings plan). The pension trust is a trust as described in section 401(a) and is exempt from tax under section 501(a). Specifically, the pension trust is a defined benefit pension plan having a plan year beginning October 1 and ending September 30. The savings plan is a qualified pension plan as described in section 401(a) and is exempt from tax under section 501(a). On December 31, 1987, petitioner separated from service with Cabot under an early retirement program. Petitioner accrued benefits under the pension trust through December 31, 1987. Because of petitioner's separation from *98 service, on January 1, 1988, petitioner received a distribution in the amount of $ 116,278.89 from the pension trust (the pension trust distribution). The pension trust distribution qualified as a lump-sum distribution under section 402(e)(4). The pension trust distribution included $ 7,001.23 that had been previously taxed to petitioner, while the remaining $ 109,277.66 (the taxable portion) had not been taxed to him. Petitioner was eligible under section 1122(h)(5) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2471, as amended by section 1011A(b)(15) of the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, 102 Stat. 3342, 3475, to elect 10-year averaging for the taxable portion of the pension trust distribution. On January 4, 1988, petitioner opened an individual retirement account with Investors Fiduciary Trust Co. (the IRA). The IRA qualified as an individual retirement account described in section 408(a). Initially, petitioner deposited the taxable portion of the pension trust distribution into the IRA. On the "Application to Custodian for Individual Retirement Account" filed by petitioner with Investors Fiduciary Trust Co., petitioner, *99 in the space entitled "Type of IRA" checked the box marked "Rollover Account -- Distribution from a qualified retirement plan in compliance with IRS Rollover regulations". On this form was also the statement "This is an IRA Rollover from a qualified distribution received within 60 days". Under space 5 entitled "Rollover/Transfers" petitioner checked the box entitled "Rollover", and under type of roll over, checked "Corporate". Prior to receiving the pension trust distribution, petitioner discussed with an employee of the Internal Revenue Service (the IRS), the tax options for a lump-sum distribution from a pension trust. Petitioner was concerned about rolling over the distribution into an individual retirement account, because of a possible need to use the funds for living expenses. Petitioner understood the IRS employee to tell him that he could rollover a lump-sum distribution into an individual retirement account and, at any time within 1 year, withdraw the distribution from the individual retirement account and elect 10-year averaging. On February 4, 1988, petitioner received a distribution of $ 5,603.42 from the savings plan (the savings plan distribution), all of which *100 was taxable to petitioner. The savings plan distribution did not qualify as a lump-sum distribution according to section 402(e)(4). The savings plan distribution did qualify for rollover into an individual retirement account. On March 11, 1988, petitioner deposited the savings plan distribution into the IRA he had opened at Investors Fiduciary Trust Co. On July 25, 1988, petitioner received a distribution from the Investors Fiduciary Trust Co. in the amount of $ 113,412.21 (the IRA distribution), which consisted of the taxable portion of the pension trust distribution, plus the amount of income attributable to such initial contribution from January 8, 1988, to July 25, 1988. Petitioner and his former spouse filed on or before April 15, 1989, their joint Federal income tax return for the calendar year 1988 (the tax return). Petitioner attached to the tax return a Form 4972 (Tax on Lump-Sum Distributions). In response to the question on the Form 4972 asking whether a rollover of any part of the distribution took place, petitioner marked the "no" box. Petitioner reported on Form 4972 the receipt during the 1988 tax year of a $ 113,412 distribution and elected to use 10-year averaging *101 in reporting the entire distribution of $ 113,412. Petitioner calculated the tax on the distribution on the 10-year averaging basis to be $ 16,880. In the notice of deficiency, respondent disallowed petitioner's use of 10-year averaging in reporting the tax on the $ 113,412 distribution and included the full amount of the distribution in petitioner's income for 1988. Respondent also determined a 10-percent additional tax under section 72(t) on the distribution. Petitioner does not dispute that the additional tax should be applied to the pension trust distribution in the amount of $ 109,277.66. The 10-percent tax on this amount is $ 10,927.76. Petitioner does dispute the application of section 72(t) to the amount of income attributable to the $ 109,277.66 initial contribution while it was in the IRA, which income was included in the distribution. Petitioner's position is that he should be allowed to use 10-year averaging to report the IRA distribution because the IRA distribution was nothing more than the taxable portion of the pension trust distribution, plus income earned while it was in the IRA, and either he never elected to roll over the pension trust distribution or he *102 should be allowed to revoke the rollover election. Petitioner further argues that section 1.402(a)(5)-1T, Q&A-4, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (Feb. 4, 1986) (the temporary regulation), is invalid because the notice requirements of 5 U.S.C section 553(d) (1988) and the public procedure requirement of 5 U.S.C. section 553(c) (1988) were not followed. Section 402(a)(1)[2] provides the general rule that distributions from a qualified plan, other than amounts representing a return of the distributee's after-tax voluntary contributions, are included in the income of the distributee. See Burton v. Commissioner, 99 T.C. 622, 625 (1992). Several exceptions to this general rule exist. One of the exceptions provided for in section 402(a)(5), excludes from the income of the distributee the amounts distributed from a qualified plan which are rolled over into "an eligible retirement plan". The rollover must take place within 60 days of receipt of the distribution. Sec. 402(a)(5)(C). *103 Another exception is for lump-sum distributions. Section 402(e)[3] provides for the imposition of a separate tax on lump-sum distributions. Prior to 1987 the separate tax on lump-sum distributions was a tax computed by using 10-year averaging. The effect of 10-year averaging is that a lump-sum distribution is taxed as if it had been received evenly over a 10-year period, rather than taxed as having been received entirely in 1 year. The Tax Reform Act of 1986 replaced 10-year averaging with 5-year averaging for tax years ending after December 31, 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1122(a)(2), 100 Stat. 2085, 2466. However, section 1122(h)(5) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2471, provided a special rule that allows taxpayers who have attained age 50 before January 1, 1986, to use 10-year averaging. On January 1, 1986, petitioner had attained age 50. Therefore, petitioner was eligible to use 10-year averaging. *104 Section 402(e)(3) allows for a deduction from gross income of the amount of the lump-sum distribution for which the separate tax is elected. If any portion of a lump-sum distribution is rolled over in accordance with section 402(a)(5), the remaining portion of the lump-sum distribution is not eligible for the separate tax of section 402(e). Sec. 402(a)(6)(C); see also sec. 1.402(a)(5)-1T, Q&A-4, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (Feb. 4, 1986). Section 402(a)(5)(D)(i)(III) provides that an employee may elect to treat a contribution to an individual retirement account of a partial distribution as a rollover contribution. Q&A-3 of section 1.402(a)(5)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (Feb. 4, 1986), states that such election "is made by designating, in writing, to the trustee or issuer of the IRA at the time of the contribution that the contribution is to be treated as a rollover contribution." Also, the temporary regulation provides that such an election is irrevocable. Sec. 1.402(a)(5)-1T, Q&A-3, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (Feb. 4, 1986). Q&A-4 of *105 the temporary regulation provides that the election requirements set forth in Q&A-3 apply to a rollover of a qualified total distribution into an individual retirement account under section 402(a)(5). A lump-sum distribution qualifies as a qualified total distribution. Sec. 402(a)(5)(E)(i)(II). Therefore, according to the temporary regulation, an election to roll over a qualified total distribution to an individual retirement account is an irrevocable election. After an examination of the facts of the present case, we conclude that the pension trust distribution is a qualified total distribution and that petitioner did make an election to roll over the taxable portion of the pension trust distribution. Petitioner argues that he did not understand that he was making a "rollover" election and did not know that the regulations made a rollover election irrevocable. However, he signed an application for this IRA account checking "Rollover Account -- in compliance with IRS Rollover regulations" on January 4, 1988. The temporary regulations governing rollovers were published on February 4, 1986. So petitioner had available to him the temporary regulations when he applied to roll over *106 his distribution into an IRA. According to the temporary regulation, such rollover election is irrevocable. Petitioner argues that the temporary regulation is invalid. We have twice relied on the temporary regulation in holding in cases involving partial rollover of a lump-sum distribution that a rollover election made by a taxpayer is irrevocable. Barrett v. Commissioner, T.C. Memo. 1992-611; Hall v. Commissioner, T.C. Memo. 1991-133. Temporary regulations are entitled to the same weight as final regulations. Truck & Equipment Corp. v. Commissioner, 98 T.C. 141, 149 (1992) (citing Nissho Iwai American Corp. v. Commissioner, 89 T.C. 765 (1987)); Zinniel v. Commissioner, 89 T.C. 357 (1987), affd. 883 F.2d 1350 (7th Cir. 1989). Generally, temporary regulations are effective upon publication, which in the case of the regulations here involved was February 4, 1986, and remain in effect until replaced by final regulations. H. Conf. Rept. 100-1104 (Vol. 2) at 217 (1988), 1988-3 C.B. 473, 707. *107 Regulations are either legislative or interpretative in character. Estate of Pullin v. Commissioner, 84 T.C. 789, 795 (1985). An interpretative regulation is issued under the general authority vested in the Secretary by section 7805, whereas a legislative regulation is issued pursuant to a specific congressional delegation to the Secretary. The specific provisions of the temporary regulations involved here (Q&A-4) are interpretative. According to section 7805, respondent, not the courts, is responsible for prescribing "all needful rules and regulations for the enforcement" of the Internal Revenue Code. United States v. Correll, 389 U.S. 299, 307 (1967). In order to have a regulation declared invalid, a taxpayer "needs more than a plausible policy argument". National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 488 (1979). When deciding whether a regulation is valid, our role is to determine whether the regulation is within respondent's authority to "'implement the congressional mandate in some reasonable manner'". Id. (quoting United States v. Correll, 389 U.S. at 307). *108 Unless an interpretative regulation is unreasonable and plainly inconsistent with the statute, it should be sustained. Bingler v. Johnson, 394 U.S. 741, 750 (1969). Respondent, not the courts, has the power to decide between reasonable interpretations. National Muffler Dealers Association, Inc. v. United States, supra at 488. Section 402(a)(5) was added to the Internal Revenue Code by section 2002(g)(5) of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829, 968, in order to facilitate portability of pensions. H. Conf. Rept. 93-1280, at 341 (1974), 1974-3 C.B. 415, 502; H. Rept. 93-807, at 29-30, 139-140 (1974), 1974-3 C.B. (Supp.) 236, 264-265, 374-375. In 1978, section 402(a)(6)(C), which prohibits the use of 10-year averaging for reporting a lump-sum distribution after the rollover of any part of the lump-sum distribution, was added to the Internal Revenue Code as part of a broader statutory amendment authorizing partial rollovers of lump-sum distributions. Act of Oct. 14, 1978, Pub. L. 95-458, sec. 4(c), 92 Stat. 1255, 1259. *109 The legislative history to this amendment makes it clear that even though Congress was willing to allow rollovers of less than all of the recipient's lump-sum distribution in certain cases, it still did not intend 10-year averaging to be used in conjunction with the rollover election. S. Rept. 95-1127 at 8, 9 (1978), 1978-2 C.B. at 372, 373. The position and requirements set forth in section 1.402(a)(5)-1T, Q&A-4, Temporary Income Tax Regs., are reasonable. Therefore, we hold that the temporary regulation is valid and petitioner's rollover election was irrevocable. Petitioner's argument that section 1.402(a)(5)-1T, Q&A-4, Temporary Income Tax Regs., is invalid for the failure of respondent to comply with the rule-making requirements of 5 U.S.C. section 553 (1988), is without merit. On February 4, 1986, when the temporary regulations here involved were issued, section 7805(e) had not been enacted. This section was enacted in November 1988 and specifically applies only to temporary regulations issued after its enactment in November 1988. We note that petitioner does not rely on the provisions of section 7805(e) and *110 because of its lack of applicability to the regulations here involved, would not be justified in so doing. Under 5 U.S.C. section 553 (1988), which reenacted to some extent provisions which had been in effect for many years, if the regulation is an interpretative regulation, respondent is not required to follow the notice or hearing requirements. 5 U.S.C. section 553(b)(3)(A), (d)(2) (1988). A provision to this effect was also in prior statutes. Therefore, respondent has not violated the requirements of 5 U.S.C. section 553 as to the temporary regulation. Petitioner also argues that prior to promulgating the temporary regulation, respondent had in private letter rulings allowed the election of 10-year averaging even after a rollover election had been made. It is petitioner's argument that these private letter rulings are evidence that section 402 allows for the revocation of a rollover election. Prior to the issuance of section 1.402(a)(5)-1T, Temporary Income Tax Regs., 51 Fed. Reg. 4320 (Feb. 4, 1986), respondent had issued several private letter *111 rulings that allowed a taxpayer to elect 10-year averaging under section 402(e), notwithstanding a prior rollover of all or a part of the distribution. Respondent issued at least one private letter ruling which refused to allow a revocation of a rollover election. After the promulgation of the temporary regulation, respondent issued a private letter ruling that dealt with a distribution from a qualified plan prior to the issuance of the temporary regulations. In this ruling, respondent allowed the taxpayer to elect 10-year averaging even after a rollover had been made. In private letter rulings issued subsequent to the issuance of the temporary regulations, respondent ruled that rollovers made after March 20, 1986, were irrevocable. Private letter rulings do not constitute judicial precedent. Sec. 6110(j)(3); Estate of Jalkut v. Commissioner, 96 T.C. 675, 684 (1991). Such rulings may be evidence of respondent's position, but respondent is free to change that position. Rowan Cos. v. United States, 452 U.S. 247, 261 n.17 (1981); Teichgraeber v. Commissioner, 64 T.C. 453, 456 (1975). *112 Finally, petitioner argues that, because an employee of the IRS told him that he could roll over a distribution into an individual retirement account and then later withdraw the amount and elect 10-year averaging, the IRS is estopped from denying such treatment. If we accept petitioner's understanding of the advice he received as being a fair understanding of what an employee of the IRS said, the incorrect advice to petitioner by an IRS employee does not preclude the IRS from later maintaining a correct position. An agent as employee of respondent has no authority to approve an action by a taxpayer contrary to respondent's regulations. Bay Sound Transportation Co. v. United States, 410 F.2d 505, 510 (5th Cir. 1969). The respondent is not estopped by the unauthorized statement of her agent. Darling v. Commissioner, 49 F.2d 111, 113 (4th Cir. 1931), affg. 19 B.T.A. 337 (1930). Therefore, we hold that respondent is not estopped from asserting the position she takes here. Section 72(t) provides for a 10-percent additional tax (the additional tax) on the portion of a distribution from a qualified *113 retirement plan which is includable in the recipient's gross income unless one of the exceptions listed in section 72(t)(2) applies. [4]The committee reports indicate that one of the reasons for enacting section 72(t) was to deter the use of retirement savings for nonretirement use. H. Rept. 99-426, at 728-729 (1985), 1986-3 C.B. (Vol. 2) 1, 728-729; S. Rept. 99-313, at 612-613 (1986), 1986-3 C.B. (Vol. 3) 1, 612-613. *114 Petitioner concedes that he is liable for the additional tax on the pension plan distribution, but claims not to be liable for the additional tax on the amount of the income earned on the IRA which was part of the IRA distribution. Petitioner's claim is based on his argument, which we have rejected, that he should be allowed to revoke the rollover election of the pension trust distribution. We disagree with petitioner. In the present case, petitioner has received three distributions. The first distribution was the pension trust distribution, which was rolled over into the IRA making it not includable in petitioner's gross income according to section 402(a)(5). The second distribution was the savings plan distribution, which was also rolled over into the IRA. The third distribution was the IRA distribution. The IRA distribution was not rolled over into the IRA or any other eligible retirement plan. Therefore, as we have held above, the entire IRA distribution was includable in petitioner's income and is, therefore, subject to the additional tax under section 72(t). Respondent's determination as to the additional tax under section 72(t) is upheld. Decision will be entered *115 for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Sec. 402(a) provides: (a) Taxability Of Beneficiary Of Exempt Trust. -- (1) General Rule. -- Except as provided in paragraph (4), the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed, under section 72 (relating to annuities). The amount actually distributed to any distributee shall not include net unrealized appreciation in securities of the employer corporation attributable to the amount contributed by the employee (other than deductible employee contributions within the meaning of section 72(o)(5)). Such net unrealized appreciation and the resulting adjustments to basis of such securities shall be determined in accordance with regulations prescribed by the Secretary. * * * (5) Rollover Amounts. -- (A) General Rule. -- If -- (i) any portion of the balance to the credit of an employee in a qualified trust is paid to him, (ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and (iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.↩
3. Sec. 402(e) provides: (e) Tax On Lump Sum Distributions. -- (1) Imposition Of Separate Tax On Lump Sum Distributions. -- (A) Separate Tax. -- There is hereby imposed a tax (in the amount determined under subparagraph (B)) on the lump sum distribution. (B) Amount Of Tax. -- The amount of tax imposed by subparagraph (A) for any taxable year is an amount equal to 5 times the tax which would be imposed by subsection (c) of section 1 if the recipient were an individual referred to in such subsection and the taxable income were an amount equal to 1/5 of the excess of -- (i) the total taxable amount of the lump sum distribution for the taxable year, over (ii) the minimum distribution allowance.
For purposes of the preceding sentence, in determining the amount of tax under section 1(c), section 1(g) shall be applied without regard to paragraph (2)(B) thereof. (C) Minimum Distribution Allowance. -- For purposes of this paragraph, the minimum distribution allowance for the taxable year is an amount equal to -- (i) the lesser of $ 10,000 or one-half of the total taxable amount of the lump sum distribution for the taxable year, reduced (but not below zero) by (ii) 20 percent of the amount (if any) by which such total taxable amount exceeds $ 20,000. (D) Liability For Tax. -- The recipient shall be liable for the tax imposed by this paragraph.
* * * (3) Allowance Of Deduction. -- [The] total taxable amount of a lump sum distribution for the taxable year shall be allowed as a deduction from gross income for such taxable year, but only to the extent included in the taxpayer's gross income for such taxable year. (4) Definitions And Special Rules. -- (A) Lump Sum Distribution. -- For purposes of this section and section 403, the term "lump sum distribution" means the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient -- (i) on account of the employee's death, (ii) after the employee attains age 59-1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled (within the meaning of section 72(m)(7)↩)
4. Sec. 72(t) provides in relevant part: (t) 10-Percent Additional Tax On Early Distributions From Qualified Retirement Plans. -- (1) Imposition Of Additional Tax. -- If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income. (2) Subsection Not To Apply To Certain Distributions. -- Except as provided in paragraphs (3) and (4), paragraph (1) shall not apply to any of the following distributions: (A) In General. -- Distributions which are -- (i) made on or after the date on which the employee attains age 59-1/2, (ii) made to a beneficiary (or to the estate of the employee) on or after the death of the employee, (iii) attributable to the employee's being disabled within the meaning of subsection (m)(7), (iv) part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the employee or the joint lives (or joint life expectancies) of such employee and his designated beneficiary, or (v) made to an employee after separation from service after attainment of age 55, or (vi) dividends paid with respect to stock of a corporation which are described in section 404(k)↩.